[Civ. No. 9844. First Appellate District, Division One.—February 29, 1936.]

FRED EDGINGTON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Elliott Johnson for Appellant.

Clifton Hildebrand, Louis E. Goodman and Louis H. Brownstone for Respondent.

KNIGHT, J. —The defendant, Southern Pacific Company, appeals from a judgment for $7,500 entered in plaintiff's favor after trial by a jury. The action was one for damages on account of personal injuries sustained by plaintiff during the course of his employment with defendant as a brakeman on a freight train engaged in interstate commerce. The jury was called upon to render three verdicts, two special and one general. The interrogatory embodied in the first special verdict was answered in defendant's favor, and the one embodied in the second special verdict was answered in plaintiff's favor. Stated briefly, the grounds urged by defendant for reversal are that inasmuch as the first special verdict was in its favor, the general verdict and the judgment also should have been in its favor; furthermore that the trial court erroneously instructed the jury.

The accident happened in the railroad yards at Carlin, Nevada. After the train pulled into the yards the engine was uncoupled from the cars and backed slowly toward a lead track running to the roundhouse. Attached to the regular engine tender was an auxiliary water car, used to supply the engine with water. After throwing the switch to let the engine take the lead track, plaintiff boarded the extreme right-hand front end of the auxiliary water car in the direction

in which the engine was moving. He stood in an iron stirrup extending below the side of the sill of the water car, and balanced himself by grasping with his right hand a grab iron attached to the side of the auxiliary water car and with his left hand a placard board fastened to the end of the said car. He alleged in his complaint and testified at the trial that while riding in this position the grab iron loosened and the placard board broke, causing him to fall to the ground, and that as a result of the fall he suffered an injury to his knee which he claimed was permanent. The grab iron which he grasped with his right hand was attached to a steel strap binding the tank of the auxiliary water car to the frame thereof; and the placard board was constructed of a solid piece of straight grain pine, approximately an inch and a quarter thick and twelve inches square, and was fastened by iron brackets three-eighths of an inch thick and two bolts to the end of the car. The primary purpose of these placard boards is to display thereon labels of one sort or another; but as will hereinafter appear plaintiff claimed and the jury found that they were used also with the knowledge of the defendant company, customarily and in general practice, as handholds by railway switchmen in the performance of their work.

The complaint as amended set forth two causes of action. In the first it was alleged that the action was brought under the authority of three federal acts, namely, the Employers' Liability Act, the Safety Appliance Act, and the Boiler Inspection Act; and after setting forth the circumstances under which plaintiff claimed he was injured, he alleged that the use of the placard board as a handhold was in accordance with the prevailing, well-recognized and acknowledged practice and custom on all the Southern Pacific Company's lines; that the grab iron and placard board were so negligently kept and maintained that they became loose and broke and thereby plaintiff was thrown to the ground and injured. The second cause of action included all the allegations set forth in the first cause of action except those to the effect that the action was brought under the authority of the federal acts above mentioned, and it was also alleged therein that the placard board was part and appurtenance of the auxiliary water car and was not safe to operate in the service to which it was put. The answer denied the allegations concerning the de-

fective condition of the grab iron and placard board; also that the latter was customarily used as a handhold; and as special defenses the answer set up assumption of risk, that plaintiff voluntarily chose the place to work knowing the conditions, contributory negligence and unavoidable accident.

The maintenance of secure grab irons on cars operated in interstate commerce is admittedly one of the requirements of the Safety Appliance Act. In this regard said act provides and the trial court instructed the jury that "Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars"; and with respect to the question of whether the defendant complied with the foregoing provisions the court instructed the jury that the evidence in the case showed affirmatively without conflict that the auxiliary water car at the time of the accident was equipped with all the grab irons and handholds located thereon in conformity with the orders of the interstate commerce commission of the United States, which orders have the force and effect of law, but that there was a conflict in the evidence which was for the jury to decide whether or not the handhold located on the strap around the tank, which plaintiff was using, was maintained in a safe condition. In order to have the foregoing issue of fact specifically decided by the jury, the court submitted as special verdict number one the following interrogatory: "Did the grab iron or handhold located on the strap of the car in question which Mr. Edgington was holding on to, break or become detached or insecure in any manner, directly or indirectly contributing to the accident in question?" The jury's answer was "No".

In view of the foregoing finding on this particular issue of fact, it is apparent that no violation of the provisions of the Safety Appliance Act was established, and it may be granted, therefore, that if the alleged violation of that act alone presented the sole determinative issue in the case, defendant was entitled to a general verdict and judgment in its favor. But that is not the situation. As shown, plaintiff's right of recovery was based also on two additional federal acts, namely, the Employers' Liability Act and the

Boiler Inspection Act, it being claimed by plaintiff in this connection that the breaking of the alleged defective placard board which he was grasping also, so he claimed, at the time he fell, constituted a violation of the provisions of the acts last mentioned.

In this regard the Employers' Liability Act provides and the jury was instructed to the effect that a common carrier engaged in interstate commerce is liable in damages for the injury to or death of its employees, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, etc."; also that in any action for damages brought under the authority of said act the employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier "of any statute enacted for the safety of employees contributed to the injury or death of such employee". The Boiler Inspection Act provides and the jury was instructed to the effect that "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, and the same may be employed in the active service of such carrier without unnecessary peril to life or limb. . . . " And it has been held, and the jury in the present case was instructed, that the phrase "in the service to which the same are put", as contained in section 2 of the Boiler Inspection Act, must be taken to mean the service for which the appliance is designed, or to which it is put with the employer's knowledge and acquiescence. (*Chicago, B. & Q. Ry. Co.* v. *Murray*, 40 Wyo. 324 [277 Pac. 703], citing many authorities.) ■ Plaintiff alleged in his complaint and introduced evidence to prove that although these placard boards were designed primarily for the display of labels, they were used also as handholds by railroad employees, customarily and in accordance with prevailing practice, and with the knowledge, consent and acquiescence of the defendant. Those allegations were denied by defendant, and evidence was introduced in support of such denials; and upon the issue thus presented the court gave a number of instructions, several of which were proposed by the defendant

to the effect that it was only the duty of the railroad to maintain the placard board in such condition that it would be safe for the purposes for which it was designed and installed or for which it was customarily used with its knowledge and acquiescence; and that if the jury believed from the evidence that the accident was due solely to the breaking of the placard board and that said board was caused to break on account of its use by plaintiff for a purpose for which it was not designed, intended or customarily used, then there was no negligence on the part of the railroad company and the jury should so find. Therefore, in order to have this contested issue specifically decided by the jury, the court submitted its second special verdict embodying the following interrogatory: ''At the time of the accident in question was the placard board being used by Mr. Edgington for any purpose for which it was customarily used with the knowledge and consent of the Southern Pacific Company?'' The jury's answer was ''Yes''. That being so, such finding was legally sufficient in our opinion to support the conclusion that the maintenance of the defective placard board under the circumstances found by the jury amounted to a violation of the provisions of the Boiler Inspection Act forbidding the use of any locomotive tender unless all parts and appurtenances thereof are in a proper condition and safe to operate in the service to which they are put (*Chicago, B. & Q. Ry. Co.* v. *Murray, supra*); and of those provisions of the Employers' Liability Act which hold an employer liable in damages for injuries to or death of any employee resulting in whole or in part by reason of any defects or insufficiency, due to the employer's negligence, in its cars, engines, appurtenances, etc.

Defendant further contends, however, that the Boiler Inspection Act was eliminated from the .case entirely by a portion of one of the trial court's instructions, and that therefore the court erred in giving any instructions as to the provisions of that act. In furtherance of such contention defendant has stated repeatedly throughout its brief that ''the only negligence claimed by the plaintiff was an alleged violation of the provisions of the Federal Safety Appliance *Act* and the jury was so instructed''. The contention and statements thus made are evidently based upon an erroneous reading and misinterpretation of the words of the first sentence of instruction XXVII, given at plaintiff's request.

The sentence reads: "In this case the only negligence claimed by plaintiff is an alleged violation of one of the provisions of the Federal Safety Appliance *Acts* by an interstate carrier." The remainder of the instruction reads: "A violation of *one* of the Federal Safety Appliance *Acts* by an interstate carrier is in itself negligence and if such violation proximately contributes to the injury to the employee, this violation of the Safety Appliance Act renders the railroad company liable under the Federal Employers' Liability Act as being the result of a 'defect or insufficiency, due to its negligence, in its cars, engine, appliances . . . or other equipment,' within the meaning of the Federal Employers' Liability Act." (Italics ours.) As will be noted, in the first sentence of said instruction the court used the plural, "Acts", and in the second sentence declared that a violation of *one* of the Federal Safety Appliance *Acts*, etc. It is apparent therefrom as well as from the instruction as a whole that in referring to the Federal Safety Appliance "Acts" the court intended to and did include the group of federal acts which plaintiff charged were violated, and which are often referred to in the decisions as the Federal Safety Appliance Acts because their purpose is to relieve trainmen as far as possible of dangerous working conditions. Moreover, the pleadings, the evidence, the instructions proposed by defendant and given by the court, and the interrogatories embodied in the special verdicts, all show that the case was tried upon the theory that all three federal acts were involved; and it is well settled that where an action is based on the alleged violation of several statutes, and a general verdict is rendered in favor of the plaintiff, such verdict will be sustained if it appears that any one of said statutes was violated. (*Walton* v. *Southern Pacific Co.*, 8 Cal. App. (2d) 290 [48 Pac. (2d) 108].)

The judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1936.