[Civ. No. 11791.   First Dist., Div. One.   Mar. 27, 1942.]

MAY WEINBERG, Respondent, v. DAYTON STORAGE COMPANY, INC. (a Corporation) et al., Defendants; LYON STORAGE AND MOVING COMPANY (a Corporation), Appellant.

Aiken, Kramer & Aiken for Appellant.

Harold C. Holmes, Jr., and Breed, Burpee & Robinson as Amici Curiae on behalf of Appellant.

Dudley H. Nebeker and Richard H. Klippert for Respondent.

PETERS, P. J.—Defendant Lyon Storage and Moving Co. appeals from a judgment awarding plaintiff $1,750 as the reasonable value of certain personal property of plaintiff found to have been converted by defendant, and also awarding plaintiff $750 damages for the loss of use of the property. Dayton Storage Company, Inc., a New York corporation which does not do business in this state, was also named as a defendant, and allegations of the complaint were directed against it, but it was never served, nor did it appear in the action. The deposition of its employee M. H. Richer, however, was read into evidence on behalf of defendant.

The complaint as originally filed states a cause of action for conversion. It avers that on January 5, 1940, plaintiff was the owner and entitled to the possession of certain described personal property; that on that date she served on defendant a written demand for the return of the property; that defendant then and still refuses to return the property to plaintiff; that on that date defendant converted the property to plaintiff's damage in the sum of $5,000. At the trial, after all the evidence was in, plaintiff was permitted to amend the complaint "to conform to proof" by adding a second count charging defendants Dayton Storage Company, Inc., and Lyon Storage and Moving Co. with fraud and deceit.

The evidence shows that in November, 1938, the respondent made arrangements with the Dayton Storage Company, Inc., in New York for the storage of her household furnishings in New York, and for their transportation to California when, and if, she should desire them. The negotiations were had with M. H. Richer, the "estimator" employed by Dayton Storage Company, Inc. The respondent testified that she showed Richer all of the goods to be stored and shipped, and that he told her that packed in a lift van the goods would weigh, "at the most," 3,000 pounds. It is a reasonable inter-

pretation of the evidence that Richer represented that the maximum weight of the goods in a lift van would not be over the above-mentioned weight and that they probably would weigh less. Based on this representation, respondent entered into a written contract with the Dayton Storage Company, Inc., on a form prepared by it, for the transportation of the goods to California when ordered by respondent for $6.50 per one hundred pounds. The agreement provided that the goods should be packed and removed from respondent's New York apartment by the Dayton Storage Company, Inc., and shipped by boat in lift van to Oakland, California, and delivered to, and unpacked in, respondent's residence in Oakland for the above-mentioned rate. In the printed portion of the form appeared the following: "This estimate is approximate only on goods listed above and is not to be considered a definite figure." It was then provided the goods should be stored in New York for one month for $7.25 (and $7.25 for each succeeding month); that the "Estimated Wgt. 3,000 lbs. at $6.50 per cwt." made the shipping charges $195; that the cost of insurance was $8; that the "Total Estimate" was $210.25. Typed on the bottom of the first page appears this statement: "If shipment goes to California, all storage charges and 50% of estimate to be paid before shipping." The agreement was signed by respondent and Richer, and respondent paid $10 on account at that time. Respondent also testified that she was informed by Richer that appellant represented the Dayton Storage Company, Inc., in California, and that when she desired the goods she should call upon that company in this state.

In November, 1939, respondent decided to have the goods shipped to California. She had paid the Dayton Storage Company, Inc., for the storage of the goods except for the first month which was included in the above-mentioned contract. She called upon appellant company in Oakland and talked with Jack Blum, "storage estimator and salesman." Respondent showed the contract to Blum, and asked that the goods be shipped. The appellant communicated with the Dayton Storage Company, Inc., and it was arranged that appellant should act as the agent of the Dayton Storage Company, Inc., in moving the goods from the shipping terminus in Oakland to respondent's residence in that city, and in collecting the amount due from respondent. Appellant was to be paid by the Dayton Storage Company, Inc., for this service at rates fixed by the California Railroad Commission. Respondent

paid appellant $105, the same being approximately 50% of the estimate fixed in the contract. Respondent had several conversations with Blum concerning the possibility of shipping the goods by train, but, upon ascertaining the rate, ordered the goods shipped by boat according to the contract.

The Dayton Storage Company, Inc., delivered the goods to a steamship company on November 30, 1939. The goods were consigned to appellant and the bill of lading showed a purported weight of 7,900 pounds. The goods were removed from the boat in Los Angeles due to the shipping strike in San Francisco. They were conveyed by train by the Southern Pacific to San Francisco consigned to appellant, the bill of lading also showing a purported weight of 7,900 pounds.

On December 11, 1939, prior to the arrival of the goods, appellant wrote to respondent advising that the goods had been shipped, that the shipment weighed 7,900 pounds and that she owed a balance of $416.50. On December 27, 1939, respondent paid to appellant an additional $134.19. On January 4, 1940, appellant wrote to respondent informing her that the goods had arrived, and requesting payment of a claimed balance of $282.51, plus an additional $51.75 for railroad freight from Los Angeles. The claimed balance of $282.51 is based on a total charge of $513.50 for 7,900 pounds at $6.50 per one hundred pounds, plus $8 insurance, making a total of $521.50. If payments of $105 and $134.19 be deducted the balance is $282.31. The demand, however, was for $282.51.

Respondent had seriously questioned the correctness of the charges from the moment she was first informed of the total amount claimed. She had communicated that fact on several occasions to appellant. In fact, before the goods were shipped from Los Angeles, appellant and respondent entered into an agreement that by permitting such shipment respondent waived no rights by reason of her claimed overcharges.

After receiving the demand of January 4, 1940, the next day respondent served a written demand on appellant, in which she stated that she had already paid $264.44 for the shipping, which was $54.19 more than the amount called for by the original contract ($210.25); that that demand was made for the return of the overpayment and for immediate delivery of the goods. It concluded that, unless delivery of the property was made within twenty-four hours of the receipt of the demand, respondent would treat the retention of the property as a conversion. Receiving no response from

appellant, eight days later respondent filed her complaint charging appellant and the Dayton Storage Company, Inc., with conversion. The latter company, however, was not served and did not appear.

The case proceeded to trial upon the theory advanced by respondent that under her contract she was liable only for charges predicated on a weight of not to exceed 3,000 pounds. Appellant contended that the contract showed on its face that it was an estimate, and that respondent was liable for 7,900 pounds at $6.50 per one hundred pounds. During the first part of the trial it was assumed that the goods actually weighed 7,900 pounds. The goods were then in the Southern Pacific warehouse consigned to appellant. After appellant had closed its case respondent introduced evidence that she had procured the goods to be weighed at the Southern Pacific warehouse and that the true weight of the goods, plus the weight of the lift van, was 4,415 pounds. Following the introduction of this evidence, which was not contradicted by appellant, and, after the close of all the evidence, respondent was permitted to amend her complaint to conform to proof by adding a second count to her complaint wherein she charged the appellant and the Dayton Storage Company, Inc., with fraud and deceit in misrepresenting the weight of the goods.

On the allegations of the first count the court found that the contract between respondent and the Dayton Storage Company, Inc., was that the company would deliver the goods to respondent at her residence in Oakland for $6.50 per one hundred pounds; that when appellant received the goods it did not deliver the same but demanded as a condition of delivery payment of $334.26, which represented the balance due on a weight of 7,900 pounds plus freight charges from Los Angeles; that the Dayton Storage Company, Inc., represented that the goods would weigh approximately 3,000 pounds; that they actually weighed 4,415 pounds.

Upon the second count the court found that the Dayton Storage Company, Inc., with intent to deceive, represented that the goods would weigh, when packed, 3,000 pounds, which it knew to be false; that respondent entered into the contract in reliance on such representation; that the Dayton Storage Company, Inc., and appellant sought to collect on a basis of 7,900 pounds weight, when the goods actually weighed 4,415 pounds "which was an additional and excessive

weight over and above that which the defendants were entitled to charge for of thirty four hundred eighty five pounds (3485), the true facts of which the defendants Dayton Storage Company, Inc., concealed from plaintiff.''

It is to be noted that the above findings sustain the right of appellant to charge for 4,415 pounds, rather than 3,000 pounds. It should also be noted that it is not found that appellant misrepresented the weight knowing the true weight. There is no evidence that appellant knew that the true weight was not 7,900 pounds. Appellant had been informed by the Dayton Storage Company, Inc., that the goods weighed 7,900 pounds, and that figure had been given on the two bills of lading. However, the same cannot be said as to appellant's principal, the Dayton Storage Company, Inc. The deposition of Richer, the estimator, for that company, was taken before trial. He testified that he estimated the weight at 3,000 pounds, but that some time after the goods were received by his company they were weighed and the weight was 7,900 pounds. He conceded that in spite of this great variance respondent was not notified of the claimed weight until about the time the goods were shipped.

Although appellant did not know that the weights given on the bills of lading were incorrect, there is some question as to whether, in the exercise of reasonable care, appellant should not have had the goods reweighed before making the demand upon respondent. Appellant knew of the ''estimate'' of 3,000 pounds, and knew that respondent seriously questioned the correctness of the charges. Blum testified that, although actual weight frequently varied from estimates to a considerable extent, he had ''never seen such a wide variance as this one; I cannot understand it how anyone could say it weighed approximately 3,000 pounds and the shipment could weigh 7,900 pounds . . .'' The witness Harvey Lyon testified that he was surprised at the variance between the estimate and the weight shown on the bills of lading. It might well be that good faith, under the circumstances, required appellant to have the goods re-weighed.

However, even if it be conceded that appellant was acting in good faith and in complete accordance with the instructions of its principal, the Dayton Storage Company, Inc., the amount that it demanded as a condition precedent to delivery of the goods was excessive. ■ The law is settled that an agent is guilty of conversion, although acting in good faith

and in exact accord with the instructions of his principal, if the latter is guilty of a conversion. (*Swim* v. *Wilson*, 90 Cal. 126 [27 Pac. 33, 25 Am. St. Rep. 110, 13 L. R. A. 605].) Appellant does not challenge this principle.

The major contentions of appellant are that it is not liable for a conversion because (1) respondent made no proper demand in that she did not tender the amount actually due on 4,415 pounds; and (2) when appellant offered to deliver the goods on payment of the balance due on 7,900 pounds respondent did not challenge the weight given on the bills of lading, but in her demand of January 5, 1940, took the position that regardless of weight she was entitled to the goods on payment of the $210.25.

The legal situation is therefore one where the person in possession of the goods demanded, as a condition precedent to delivery, the payment of an excessive sum, while the owner of the goods tendered an amount which, as it subsequently turned out, was too little. Under such circumstances, has a conversion been committed? ▇ It is the general rule that where the bailee of personal property has come into possession of the owner's property lawfully, a demand for possession by the owner is essential to create the liability. (See cases collected, 24 Cal. Jur., p. 1032, §10.) Appellant urges that, when it tendered the goods on condition that charges predicated on a claimed weight of 7,900 pounds be paid, and respondent did not then challenge the weight, the respondent waived that objection. ▇ It relies heavily on the rule that objections to a tender not raised are deemed waived. (*Kofoed* v. *Gordon*, 122 Cal. 314 [54 Pac. 1115]; *Hind* v. *Oriental Products Co., Inc.*, 195 Cal. 655 [235 Pac. 438].) The basis of that rule is that, under ordinary circumstances, a party who makes an improper tender through no fault of his own, should be given an opportunity to correct it. That rule, however, is not of inevitable application. It, as well as the rule in reference to the necessity of a demand, is subject to exceptions. ▇ It is well-settled in this state that there is no necessity for a demand where the acts of the defendant in relation to the property show a conversion, or where, under the facts, a demand would be futile. (*Mier* v. *Southern California Ice Co.*, 56 Cal. App. 512 [206 Pac. 83]; *Wood* v. *McDonald*, 66 Cal. 546 [6 Pac. 452]; *Lowe* v. *Ozmun*, 3 Cal. App. 387 [86 Pac. 729]; *Fiedler* v. *Allen*, 117 Cal. App. 622 [4 Pac. (2d) 292]; *Yamada* v. *Osawa*, 12 Cal. App. (2d) 133 [54 Pac. (2d) 1135]; *Metzler* v.

*Foster Holding Co.,* 5 Cal. (2d) 278 [54 Pac. (2d) 447].) Each case must turn upon its own facts. ■ In the present case the appellant knew long before the goods arrived that respondent challenged the correctness of the charges. Appellant had seen the contract estimating the weight at 3,000 pounds. Blum testified that, although true weight varied from the estimate, he had never seen a case with a variance such as here is claimed. The question of the weight was several times discussed between appellant and respondent—in fact, appellant wrote to the Dayton Storage Company, Inc., asking that company to ascertain the "exact weight" of the goods before they were shipped. The next day respondent telegraphed to New York informing the Dayton Storage Company, Inc., to ship the goods immediately and to disregard appellant's letter. Respondent testified that this telegram was sent at the suggestion of Blum. When the goods arrived in Los Angeles there was such a dispute over the charges that it was agreed between the appellant and respondent that by agreeing to the shipment by rail respondent would not waive her claim that there was an overcharge. The goods were consigned to the appellant. Under such circumstances, the appellant sent the demand of January 4, 1940, by which it demanded payment based on a claimed weight of 7,900 pounds. Appellant urges respondent was under a duty to demand that the goods be re-weighed. We think that, from all the circumstances, the trial court was justified in holding that with knowledge of all the above-mentioned facts appellant was under a duty to ascertain the true facts before it made its demand. By electing to go ahead by demanding payment based on a claimed weight of 7,900 pounds it indicated to any reasonable or prudent person that a tender of less would not be accepted. ■ When respondent made her demand on January 5th certainly the appellant knew that respondent challenged the claimed charges. Although respondent in her letter did not expressly challenge the correctness of the weight, in view of the surrounding circumstances, such a challenge was implicit in the very nature of the demand by her. Under these circumstances, the demand made by respondent was sufficient. The evidence amply supports the finding of the trial court that there was a conversion by appellant.

■ Appellant next urges that it was error to permit the filing of the first amended complaint. The record shows that the trial court permitted respondent to file an amended complaint

after the evidence had been closed. By this pleading the respondent was permitted to add a new cause of action predicated on the theory of fraud. It was filed on the theory that it was an amendment to conform to proof. While it is true that great liberality should be permitted in the filing of amendments where they do not prejudice the opposing party, it is equally true that amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend. (*Richter* v. *Adams*, 19 Cal. App. (2d) 572 [66 Pac. (2d) 226]; *Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 Pac. 1038]; *Lavely* v. *Nonemaker*, 212 Cal. 380 [298 Pac. 976]; *Bank of United States* v. *Foreman*, 102 Cal. App. 756 [283 Pac. 874].) However, although it was probably error to permit this pleading to be filed, such error in no way prejudiced appellant. The findings on conversion being amply supported by the evidence, the findings on the fraud issue may be entirely disregarded.

None of the other points urged by appellant need be discussed except its contention that the cause must be reversed for a new trial on the issue of damages. With that contention we agree. In the original complaint respondent prayed for $5,000 for damages for the conversion. Her evidence as to the value of the converted property, and, as to damages for loss of use, was quite sketchy. On direct examination she testified that the reasonable fair value of the converted articles was $5,000, and that the reasonable damage for loss of use of the articles was $200 a month. On cross-examination she not only could not fix the value of many of the articles but clearly indicated that a portion of the value was based on sentimental factors. When the appellant started to put in its case it produced an auctioneer who started to testify as to value when it developed that he had never seen the goods in question. The trial court very properly suggested that the goods should be viewed by the witness, and, perhaps, by an appraiser appointed by the court. The parties then stipulated that the court should first pass on the question of liability without further evidence of value, and then, if the court desired evidence as to value, it might make an order to view the goods and might appoint an appraiser. No further evidence of value was offered. After all the evidence on the question of liability was in, the case went over for some five months

during which time several arguments on the law were presented to the trial court. On November 6, 1940, the case was again called for argument. At that time the court asked: "Could that matter of valuation be stipulated to, to clear it up?" The court then stated: "The testimony of the value is very, very meager." Under those circumstances, counsel for respondent replied: "For the purpose of this hearing, if I get your point, your Honor, we will stipulate that the plaintiff may receive back her goods in the condition they were delivered to the principal Dayton Storage Company in lieu of getting a reasonable value for her goods, which she claims to have been worth the sum of $5,000 and then we respectfully submit that she receive the natural and probable consequential damages which flow therefrom, and if your Honor determines there has been a conversion." The judge replied: "All right." Thereafter, the cause was continued from time to time for further argument but no further evidence of value was offered or requested. The conclusions of law as originally prepared contained a provision that in lieu of damages the appellant could deliver the converted property to respondent, but this provision was deleted by the trial judge. No reason appears or has been suggested as to why this provision was deleted. Under the judgment the respondent was awarded $1,750 as damages for the conversion of the property, and $750 for the loss of use of the property. While it may be true that the proof of value is sufficient to support the finding of value, a point we do not now decide, it is equally clear that appellant cut short its proof of value in reliance on the stipulation. This was error of a most serious and prejudicial nature. A party cannot be permitted thus to lull his adversary into believing that the issue of value has been removed from the case, and then secure a judgment for the value.

On the new trial the trial court can determine whether respondent agreed to bear the cost of shipping the goods from Los Angeles to Oakland. No finding was made on this issue. There should also be deducted from the amount of respondent's recovery the difference between the cost of shipping 4,415 pounds at $6.50 per one hundred pounds, and the amount paid by respondent to appellant and the Dayton Storage Company, Inc. No useful purpose would be served in again trying the conversion issue. The judgment is reversed and the cause remanded for a new trial on the sole

issue of damages. Both sides to bear their own costs on this appeal.

Ward, J., and Goodell, J. pro tem., concurred.

A petition for a rehearing was denied April 25, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 25, 1942.