[Civ. No. 16381. Second Dist., Div. One. Oct. 28, 1948.]

JEW FUN HIM, Appellant, v. OCCIDENTAL LIFE
INSURANCE COMPANY, Respondent.

Harry M. Irwin for Appellant.

Gibson, Dunn & Crutcher and Frederic H. Sturdy for Respondent.

DORAN, J.—The complaint herein alleges that on June 25, 1942, Clinton Chow, plaintiff's son, applied to defendant company for an endowment life policy which was issued on July 6, 1942. According to the appellant's brief, the insurer therein "agreed, if the insured should die before the end of said Endowment Period (at age 50), to pay $3,000 to plaintiff; that Clinton died on November 1, 1945"; that defendant refused to pay any sum whatever except $450.64 to be paid upon the execution by plaintiff of a full release of all liability, and that no part of the $3,000 has been paid. Neither the original complaint nor a first amendment thereto contains any allegation or suggestion of fraud or unfairness on the part of the insurer. A proposed second amendment refused by the trial court, did, however, charge fraud on the part of the insurer.

The respondent insurer defended the action upon the basis of a certain "War and Aviation Exclusion Clause" contained in the policy which, among other things, limited the insurer's liability to a return of the premiums paid, "if death of the insured result, directly or indirectly, from service, travel or flight in any kind of aircraft except as a fare-paying passenger in a licensed commercial aircraft . . . on a regular passenger air route between definitely established airports, both of which are within the Home Areas." The term "Home Areas" was defined as meaning "the forty-eight states of the United States, the District of Columbia and the Dominion of Canada."

From appellant's sworn proof of loss it appears that the insured, Clinton Chow, a member of the armed forces, died in an airplane accident at Karlsruhe, Germany. Therefore, as stated in respondent's brief, "such death fell squarely

within the exclusion clause.'' The $450.64, which the insurer offered to pay, represented the return of premiums paid, plus interest,—the limit of liability under the provisions of said exclusion clause.

After the case was at issue both parties moved for summary judgment, representing that no triable issue of fact existed and that the sole issue was one of law, namely, whether the War and Aviation Exclusion Clause was an effective part of the policy. The trial court granted defendant's motion for a summary judgment but on learning of a recent decision in *Beddington* v. *California Western etc. Ins. Co.*, 30 Cal.2d 157 [180 P.2d 673] (May, 1947), relating to the applicability of a similar exclusion clause, reopened the matter for further argument. Later, however, summary judgment for the defendant was again granted, from which plaintiff has brought the present appeal.

Before the summary judgment for defendant was finally granted, plaintiff, appellant herein, sought to again amend the complaint by adding a proposed second cause of action sounding in tort, alleging for the first time that the exclusion clause hereinbefore mentioned, was ''surreptitiously'' inserted in the policy of the insurer, ''with the fraudulent intention and purpose of limiting and restricting its liability''; that the insured never consented thereto, and that the same was therefore invalid. This motion for leave to amend was denied. Appellant now contends that the motion was improperly denied.

Appellant's brief also presents the point that ''The judgment is not supported by the pleadings or by the order on which it purports to be based, viz.: the minute order granting defendant's motion for judgment '*as prayed for* in defendant's answer', but is directly contrary thereto.'' The argument here is that since defendant's answer admits liability to the extent of $450.64, representing premiums paid, the trial court's judgment ''that the plaintiff take *nothing*,'' is manifestly wrong. (Italics added.)

In reference to the War and Aviation Exclusion Clause appellant claims that this ''is contained in a separately executed 'Supplemental Agreement' which respondents '*attached to*' the policy''; that the insured ''did not read or know the contents of the receipt or the policy, or that the receipt 'expressed satisfaction with' or mentioned any supplemental agreement or indorsement, and that Clinton (in-

sured) was induced to and did sign the receipt upon the false representation by respondent's agent that it was merely 'a receipt for the policy.'" This receipt, executed by the insured, provides among other things, that "The Beneficiary Designation, Special Settlement Agreement, *Supplemental Agreements and Indorsements,* if any, attached to the policy have been read and found satisfactory, and I hereby accept said Policy subject to all the terms and conditions of any such Agreements and/or Indorsements." (Italics added.) And, at the top of page 4 of the policy the following indorsement is typed: "See Supplemental Agreement entitled 'War and Aviation Exclusion Clause' attached to the policy." In this connection it is to be noted that appellant's brief states that the real policy to which the insured agreed, is contained "in the first seven pages" thereof, which obviously include the indorsement mentioned above.

 Insurance policies, like other contracts, must be read as a whole, and as said in *Narver* v. *California State Life Ins. Co.,* 211 Cal. 176, 181 [294 P. 393], "Endorsements on an insurance policy form part of the insurance contract." It should be pointed out, however, that statements in the Narver case and elsewhere to the effect that policies should be construed in favor of the insured and against the insurer are applicable only where uncertainties or ambiguities appear therein, and furnish no authority for appellant's position herein.

Appellant's proposed second amendment to the complaint, alleging that the War and Aviation Exclusion Clause was fraudulently inserted in the policy without notice to the insured, was sought "on the ground that said amendment to complaint is necessary and proper in order that all of the issues and rights of the plaintiff may be judicially determined at the trial of the above entitled action." While it is doubtless true that a certain degree of liberality should prevail in reference to the allowance of amendments to pleadings, it is well established that "the allowance or refusal of amendments is a matter so largely within the sound discretion of the trial court that its exercise will not be disturbed in the absence of a showing of gross abuse."

 As was said in *Fetterley* v. *Gibson,* 210 Cal. 282, 283 [291 P. 411], from which the above quotation was taken, "Such a showing has not been made" in the instant case. And, as pointed out in the respondent's brief, the proposed amendment "would add a second and completely new and different

cause of action''; it would ''completely change the character of the action from one sounding in contract to one (of fraud) sounding in tort.'' Moreover, no explanation was offered ''for plaintiff's long delay in failing to set up the alleged facts (of fraud).'' Again, as commented upon by respondent, appellant has cited no case approving the allowance of such an amendment under circumstances similar to those here prevailing. The cases cited merely deal with fundamental principles about which there is no dispute.

▇ Although the record indicates no reversible error in the trial court's refusal to permit the proposed second amendment to appellant's complaint, the summary judgment ''that the plaintiff take nothing'' cannot, in that form, be sustained. As pointed out in appellant's brief, the answer filed by the respondent insurer ''prays judgment against plaintiff as follows: (1) That upon the payment to plaintiff of the sum of Four Hundred fifty and 64/100 Dollars ($450.64), plaintiff be directed to deliver up to the defendant, for cancellation and satisfaction, the original of said policy No. 1370222, and that it be adjudged that upon such payment this defendant be discharged from any and all further liability under the said policy.'' The respondent's motion for summary judgment seeks ''an order that plaintiff's complaint be dismissed and that judgment be entered in favor of defendant and against plaintiff *as prayed for in defendant's answer.''* (Italics added.)

This motion the trial court granted, defendant's attorney being directed to prepare the judgment. But the judgment entered was in conformity neither with the prayer of defendant's answer nor with the motion for summary judgment. On the contrary, it completely ignored the insurer's admission of liability to the extent of $450.64 and relieved the insurer from legal liability to pay plaintiff any sum whatsoever. The respondent's assertion that this error is immaterial because it intends to pay this amount in any event, does not cure the fact that in its present form, the judgment entered by the trial court is manifestly wrong. The obvious purpose of a judgment is to definitely determine the claims of the contending parties in conformity with the pleadings filed. In the instant case there was a radical departure from these precepts.

The judgment insofar as it provides that ''the plaintiff take nothing'' is therefore reversed with directions to enter judgment in favor of plaintiff in the sum of $450.64, with the

provision that upon the payment of such amount the plaintiff shall surrender the policy in question to the defendant for cancellation whereupon the defendant shall be discharged from any and all further liability under said policy.

York, P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1948.