[Civ. No. 17179.   Second Dist., Div. Two.   Feb. 6, 1950.]

THOMAS W. KNOX, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and John M. Ennis for Appellant.

Jennings & Belcher, Leo E. Sievert, Robert W. Walker and Louis E. Kearney for Respondent.

MOORE, P. J.—Plaintiff appeals from the order granting a nonsuit (Code Civ. Proc., § 581c; *Nicholson* v. *Henderson,* 25 Cal.2d 375, 378 [153 P.2d 945]) and from the order made after the nonsuit was granted denying his motion "for leave to amend the complaint to conform to proof by adding an allegation of general negligence."

### PLEADINGS AND PROOF

The complaint alleges that this action was brought "under and by virtue of the Federal Employers' Liability Act [35 Stats. 65], 45 USCA 51 et seq., and the Federal Boiler Inspection Act [36 Stats. 913], 45 USCA 23* et seq.''; that between August, 1926, and July, 1946, plaintiff was steadily employed by respondent as a locomotive fireman and operated various steam locomotives and particularly those of the 2900 type; that such locomotives were defective in violation of the provisions of section 23 (*supra*) in that various blow-off cocks on such locomotives were maintained without mufflers; that he was required to and did blow off the steam from such engines through the blow-off devices and that as a proximate result of their inefficient condition he suffered the noises generated by the unmuffled escaping steam which caused his hearing to become gradually impaired on and after June 30, 1946. He alleged as a direct and proximate result of the unsafe

---

*45 United States Code Annotated, section 23. ''It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28, 29, 30, and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.''

condition of the locomotives his hearing in both ears was impaired and he suffered severe shock and extreme pain.

The proof made of such allegations is as follows: Appellant's employment covered about 10 years and three months, to wit, from August 27, 1926, to 1931; 28 days in 1937 and from May, 1941, to June 30, 1946. On the latter date he was disqualified by reason of his impaired hearing. During the interims between his seasons of employment by respondent he worked a total of about three years on two other railroads. During the period from August, 1942, to May, 1945, he served respondent 21 months as a locomotive engineer. Therefore, of his last five years and two months he served only three years and five months as fireman. During appellant's total remaining eight years and five months of employment by respondent, some of the engines he fired had mufflers on the blow-off devices. During his railroad service appellant took periodic medical examinations. At none of them did he complain of pain caused to his ears by the blow-off operations.

After being washed a boiler may be used for 30 days. It is essential to open the blow-off cock periodically after 20 days' service as the solids in the water become concentrated and cause "foaming" with consequent loss of power. Thus the blow-off cock is an indispensable appurtenance to the locomotive powered by steam. While in respondent's service appellant operated the manual blow-off cock as many as five times in 10 miles by opening the cock five seconds and closing it three. When opened it makes a loud rasping noise. To overcome the violence of the discharge the muffler was invented. It is a steel cylinder weighing about two hundred pounds into which the steam is blown to deaden the sound and emit the steam beneath the locomotive. It was not invented prior to 1930, nor used on overland road engines prior to 1938. A number were thereafter installed prior to commencement of the war. Many locomotives of respondent had the blow-off cocks prior to June 30, 1946. All overland passenger engines have had mufflers since a time before January, 1942. They were installed by respondent after receiving the engines from the factory. It was estimated that by 1949, 70 per cent of all locomotives were equipped with mufflers.

The witness Parisen called by appellant testified that while he worked for the Union Pacific from 1943 to 1945 practically all engines in the freight service were not equipped with mufflers. The company installed them from 1938 to 1941 on

some engines, but stopped because of the shortage of steel and labor.

The only basis for recovery alleged was respondent's violation of the Boiler Inspection Act. At the trial there was no allegation of negligence. Neither was there an attempt to prove anything but the noise of the blow-off cocks, appellant's having suffered hearing impairment and respondent's failure to equip its locomotives with mufflers. In this state of the pleading and evidence the order of nonsuit was properly entered.

The respect in which respondent is alleged to have violated the Boiler Inspection Act was by improperly maintaining "various blow-off cocks" on its engines without mufflers, to appellant's detriment. That is answered by the decision in *Baltimore & Ohio Railroad Co. v. Groeger*, 266 U.S. 521 [45 S.Ct. 169, 69 L.Ed. 419], where it was contended that the death of the engineer was caused by reason of the fact that the locomotive was not equipped with a "fusible plug" in the crown sheet. Judgment for plaintiffs was reversed because there was neither statute nor order by the commission requiring the installation of fusible plugs. The court said (p. 424 [69 L.Ed.]), "The defendant was not liable for failure to furnish the best mechanical contrivances and inventions, or to discard appliances upon discovery of later improvements, provided the boiler was in proper condition and safe to operate, as required by statute." The quoted language should dispose of the question whether respondent owed any other duty to appellant than that required by statute.

No authority is cited to the effect that common carriers must at once install every device of ostensibly valuable advantage, or stop operation of locomotives until the commission acts. On the contrary, it is established by the cited authorities that without violating the Boiler Inspection Act a railroad company may continue its operations for a reasonable time without installing new safety devices. While under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, any employee may recover damages for negligence of the carrier in interstate commerce, yet under the Boiler Inspection Act recovery may be had by an employee only when the injury is caused by a prohibited defect or a failure properly to inspect the locomotive as required by sections 26, 27 and 28. By enacting section 23 Congress placed all responsibility upon the employer by the requirements of such section in which the word negli-

gence does not occur. Hence, no liability under the Boiler Inspection Act is imposed so long as the carrier complies with the specified requirements.

From the foregoing considerations it follows that the order of nonsuit was correct and on that ground the judgment must be affirmed. In view of such holding, a discussion of the proof with reference to the effect of the discharge of the blow-off cocks on appellant's hearing will not be necessary.

### DENIAL OF MOTION TO AMEND COMPLAINT NOT ERROR

█ To grant the application for leave to amend by pleading negligence under the circumstances would have been an undue interruption of the administration of justice. There was no evidence in the record with which the proposed allegation might conform. The mufflers could not be obtained by simply placing an order—due to the shortage of labor and materials. There is no evidence that respondent knew that the noise from the unmuffled blow-off cocks might affect the hearing of a fireman, nor proof that the muffled sounds of the blow-off cock do not cause higher frequencies than when not muffled. Appellant argues that the trial disclosed that the ear of the fireman at the time of the blow off is only 6 feet from the blow-off cock. There is no evidence that respondent could have moved it to a location more remote or that effort had been futilely made to close out the sound by closing the cab window.

The authorities cited by appellant in support of his claim that he proved negligence in maintenance, control and operation of the locomotives are distinguished on their facts. (*Fuller* v. *Oregon-Washington Railroad & Nav. Co.*, 93 Ore. 160 [181 P. 338, 991] ; *Scarlett* v. *Atchison, Topeka & Santa Fe Ry.*, 7 Cal.2d 181 [60 P.2d 462] ; *Edgington* v. *Southern Pacific Co.*, 12 Cal.App.2d 200 [55 P.2d 553] ; *Apache Railway Co.* v. *Shumway*, 62 Ariz. 359 [158 P.2d 142, 159 A.L.R. 857] ; *Urie* v. *Thompson*, 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282].) For illustration, in *Fuller* v. *Oregon-Washington Railroad & Nav. Co.* the commission had made a rule that locomotives constructed after a certain fashion subsequent to a specified date should have a designated type of "rear headlight" on all locomotives as they entered the shop for heavy repairs. It was a question for the jury whether making a trip without such light as required was negligence. In *Scarlett* v. *Atchison, Topeka & Santa Fe Ry.* it is held that the complaint was broad enough to allege a right of recovery for com-

mon law negligence, independent of the Federal Employers' Liability Act.

If negligence is not a basis for liability under the act, an allegation thereof would be superfluous. (*Lilly* v. *Grand Trunk Western Railway Co.*, 317 U.S. 481 [63 S.Ct. 347, 87 L.Ed. 411, 415].) Amendments to conform with the proofs should not be allowed when they raise new issues for the first time. (*Lavely* v. *Nonemaker*, 212 Cal. 380, 385 [298 P. 976] ; *Bank of U. S.* v. *Foreman*, 102 Cal.App. 756 [283 P. 874] ; *Weinberg* v. *Dayton Storage Co.*, 50 Cal.App.2d 750, 759 [124 P.2d 155] ; *Richter* v. *Adams*, 19 Cal.App.2d 572, 578 [66 P.2d 226].) Granting leave to amend a pleading during the course of a trial is within the sound discretion of the court. (*Brown* v. *Aguilar*, 202 Cal. 143, 149 [259 P. 735] ; *Jew Fun Him* v. *Occidental Life Ins. Co.*, 88 Cal.App.2d 246, 250 [198 P.2d 711] ; *Neher* v. *Kauffman*, 197 Cal. 674, 686 [242 P. 713] ; *Todhunter* v. *Klemmer*, 134 Cal. 60, 62 [66 P. 75].) Finally, such a motion makes no appeal unless accompanied by the proposed amendment. (*Martin* v. *Thompson*, 62 Cal. 618; *De l'Eau* v. *Williams*, 139 Cal.App. 116, 117 [33 P.2d 427] ; *Davis* v. *Perry*, 120 Cal.App. 670, 674 [8 P.2d 514].) It is the rule that amendments to pleadings are liberal only so long as the issues will not be radically changed by the proposed amendment. (*Abbott* v. *Limited Mutual Compensation Ins. Co.*, 30 Cal.App.2d 157, 161 [85 P.2d 961].)

The order denying leave to amend the complaint and the judgment of nonsuit are affirmed.

McComb, J., and Wilson, J., concurred.