DUNHAM v. CITY TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 16, 1906.)

1. TAXATION—TRANSFER TAX—SHARES HELD BY NONRESIDENT IN FOREIGN CORPORATION—LIABILITY FOR TAX.

Laws 1896, p. 872, c. 908, § 228, as amended by Laws 1902, p. 351, c. 101, requires the consent of the Comptroller to the transfer of corporate stock held by a nonresident decedent, unless sufficient funds are retained to pay taxes that may be assessed on account of the transfer. *Held* that, stock in a foreign corporation owned by a nonresident being nontaxable, a transfer in New York of such stock held by a nonresident decedent did not require the consent of the Comptroller.

2. CORPORATIONS—AGENTS—NONFEASANCE—LIABILITY TO THIRD PERSONS.

Where a resident transfer agent of a foreign corporation wrongfully delayed the transfer of stock held by a nonresident decedent, the agent was not liable for damages to the persons to whom the stock was transferred; its liability for nonfeasance being solely to its principal.

Exceptions from Trial Term.

Action by William G. Dunham against the City Trust Company of New York. Judgment for plaintiff. Exceptions ordered heard first by Appellate Division. Exceptions sustained.

John Dunham, a resident of St. Louis, Mo., died in June, 1903, registered owner of certain shares of the capital stock of a corporation organized under the laws of New Jersey. His will was probated in St. Louis, and letters were issued to W. Dunham and Boyd, who qualified and who thereby came into possession of the said stock. On July 13, 1903, Dunham as executor wrote to the defendant, which was the sole transfer agent of the said corporation, inclosing the certificates of this stock, and requesting the issue of new certificates to specified persons. On July 15, 1903, the defendant acknowledged the letter and inclosure, and wrote that it required a certified copy of the will and proof of the issue of the letters before it could make the transfer. On the same day the defendant wrote to the Comptroller of New York state that this application had been made to it, as transfer agent of the said corporation, "a New Jersey corporation," by the executors of "John Dunham, deceased, late of St. Louis, Mo.," for the transfer, and requesting that the "usual consent to the transfer" be granted as early as possible. · On July 17, 1903, the Comptroller acknowledged the letter· and answered that as it was "the estate of a nonresident decedent, no letters having been issued or applied for in this state," the department requested that the defendant defer the transfer "until it can ascertain the liability of said estate to taxation. If the estate proves to be exempt, you will be immediately notified, and consent forwarded. Notification of this action has been sent to the representatives of said estate." On July 20, 1903, the executor sent to the defendant a certified copy of the will of his testator and of his letters. On July 22, 1903, the defendant wrote to the executor requesting a verification of his signature. On July 25, 1903, the executor referred it to a source of verification, and asked for the transfer without unnecessary delay. On July 29, 1903, the defendant answered that the verification was satisfactory, but it could not effect the transfer until the State Comptroller consented, and that he had not replied to its letter of request. On October 1, 1903, the defendant wrote to the State Comptroller, asking if he was then prepared to give his consent. On October 2, 1903, the Comptroller answered that on July 17th the department had requested the defendant to defer the transfer until the department could ascertain as to the liability of said estate to taxation, and that on the same day the department had written to the executor in St. Louis, requesting a verified statement showing the extent and value of the estate, and, not hearing from him, it had written again without reply, and then wrote, "We must therefore request that the transfer of such stock be deferred by you." On October 16th a firm of lawyers wrote to the defendant, stating that they were informed that because of a request from the transfer tax department of the State ·Comptroller's office the defendant had declined to make the transfer until it had received a consent from the Comptroller's office, and that "this is the only reason why you decline to make such transfer. If there are other reasons, such as the fact that you have not proof that the deceased at the time' of his death was a resident of St. Louis, we should be glad to furnish you with such proof. Otherwise we must request you to make the transfer without reference to the Comptroller, upon the ground that the decedent being a nonresident, and his estate being administered in another state, to wit, in Missouri, and the corporation whose stock is in question being a New Jersey and not a New York corporation, the stock is not subject to transfer tax, and therefore the Comptroller has no right whatever to interfere." On October 17, 1903, the defendant replied that it had been acting under advice of counsel in withholding transfer pursuant to section 228 of the tax law, Laws 1896, p. 872, c. 908, as amended by chapter 101, p. 351, Laws 1902. It also suggested a conference with its own counsel, as, "of course, we have no interest in withholding the transfer," and adding that it had lately called the attention of the Comptroller to the fact that he was holding up the transfer "for an unjustifiable length of time." As the result, the counsel for the defendant advised the defendant that this transfer was not subject to the provisions of section 228 of the tax law, and therefore on October 24, 1903, the transfers were made and received. On November 6, 1903, the attorneys for the legatees gave notice to the defendant of the intention of the legatees to institute an action for damages against it for refusing a transfer, and in order that the defendant might purchase in mitigation gave notice to it of a public

sale of the stock on November 11th. On November 9th the defendant wrote, denying its liability, answering that the proposed disposition of the stock was a matter of unconcern. The stock was therefore sold for $31,775.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, and RICH, JJ.

Peter B. Olney, for plaintiff.
Albert B. Boardman, for defendant.

JENKS, J. The facts were stipulated. At the close of the testimony each party moved the court for a direction of a verdict, and neither thereafter requested any submission to the jury. The court directed a verdict for the plaintiff, and ordered that the exceptions be heard by this court in the first instance. The action is not for a conversion, for the plaintiff received the stock and sued for the damages incident to the omission of the defendant to transfer it. The proposition of the plaintiff is that it became the duty of the defendant to make the transfer on or about July 29, 1903, but as it did not make the transfer until October 22 or 24, 1903, it must therefore respond for any damages incident to such delay. After the plaintiff received the stock it was sold at public vendue. The plaintiff sued for and has recovered the difference between the price realized and the value of the stock on July 29, 1903—some $14,000—with interest.

The stock in a foreign corporation, owned by a nonresident, was not taxable. Matter of Whiting, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640. Therefore the consent of the State Comptroller, provided for by section 228 of the tax law, was not necessary in order to protect the defendant. But I am of opinion that this action does not lie. In Denny v. Manhattan Company, 2 Denio (N. Y.) 115, the resident transfer agent of a foreign corporation unjustly refused a transfer, and the plaintiff brought action on the case. The court held that the action did not lie against the defendant, as it was not the agent of the plaintiffs and owed them no duty, but the agent of the defendant to whom alone it was answerable for any neglect in the discharge of agency. The judgment was affirmed in the Court of Errors, the chancellor and two of the senators delivering "written opinions in favor of affirming the judgment of the Supreme Court upon the ground upon which its decision was made." 5 Denio, 639. In Colvin v. Holbrook, 2 N. Y. 129, the court say:

"The question must be deemed at rest in this state by the decision in Drury [misprint for Denny] v. Manhattan Co., 2 Denio, 118, affirmed in the court for the correction of errors."

See, too, Montgomery County Bank v. Albany City Bank, 7 N. Y. 459, and Morawitz on Corporations (2d Ed.) vol. 1, p. 537, citing Denny's Case, supra.

The eminent and able counsel for the plaintiff does not quarrel with the rule in Denny's Case, but would take this case out of it upon the ground that the defendant is chargeable with a misfeasance, in that "it undertook to do the business in an improper manner." Whether Mr. Wharton is correct when he speaks of the "now exploded distinction between misfeasances and nonfeasances" (Wharton's Com.

on Agency, § 538), it is not necessary to discuss, for it seems clear that under the rule in this state the contention of the plaintiff cannot prevail. In Van Antwerp v. Linton, 89 Hun, 417, 419, 35 N. Y. Supp. 318, the court, per Parker, J., say:

"As between himself and his master, he is bound to serve him with fidelity, and for a breach of his duty he becomes liable to the master, who, in turn, may be charged in damages for injuries to third persons occasioned by the nonfeasance of the servant. For misfeasance the agent is generally liable to third parties suffering thereby. The distinction between nonfeasance and misfeasance has been expressed by the courts of this state as follows: 'If the duty omitted by the agent or servant devolved upon him purely from his agency or employment, his omission is only of a duty he owes his principal or master, and the master alone is liable. While, if the duty rests upon him in his individual character, and was one that the law imposed upon him independently of his agency or employment, then he is liable.' Burns v. Pethcal, 75 Hun, 443, 27 N. Y. Supp. 503."

The judgment was affirmed on the opinion below (157 N. Y. 716, 53 N. E. 1133). In the case at bar the duty in which the defendant is said to be derelict was one devolved upon it solely perforce of the relation of principal and agent existing between it and the New Jersey corporation. In other words, the injury, if any, was not in failure of duty cast upon the defendant "by law in common with all other men."

I recommend that the exceptions of the defendant be sustained, and that a new trial be granted, costs to abide the event. All concur.