Application for temporary injunction granted.

Ordered accordingly.

---

GEORGE E. NICHOLSON, Plaintiff, *v.* JOHN P. MORGAN and Others, Defendants.

Municipal Court of the City of New York, Borough of Manhattan, First District, September, 1922.

**Stockbrokers — quasi negotiable character of stock certificate indorsed in blank — when owner who has pledged the same cannot maintain conversion against transfer agent who transfers it for subsequent purchaser in good faith — notice to transfer agent to stop transfer is ineffectual where no bond is furnished — Personal Property Law, §§ 162, 166–169.**

The complaint in an action in conversion to recover the value of ten shares of the preferred stock of a certain corporation alleged that the certificate representing said stock had been stolen from plaintiff and that defendants, members of a firm which at the time of the alleged conversion were acting as a stock transfer agent of said corporation, with knowledge of the fact, transferred the stock. The plaintiff testified that he delivered the certificate, indorsed by him in blank, to a brokerage firm as a pledge to secure a margin account. That firm repledged the certificate to secure in part an indebtedness to a creditor who in turn at or about the time its debtor became insolvent sold the certificate

in partial liquidation of the secured debt. Thereafter the certificate was successively sold to various brokerage concerns, each of whom purchased it for value in the regular course of business, without knowledge of plaintiff's claim. Prior to the last purchase of the certificate plaintiff by a letter to defendants requested that a stop be placed against the transfer of the certificate, and the defendants asked to be advised as to when the stop was to be removed. Later plaintiff at defendants' offices talked with the manager of their stock transfer department, who testified that he advised plaintiff that a bond of indemnity would have to be furnished for the protection of defendants before a stop could be established against the further transfer of the certificate. No such bond was ever furnished. The defendants' firm upon presentment of the certificate by the last purchaser and at its request transferred the certificate into the name of a designated person, which transfer was the alleged conversion sued for. *Held*, upon dismissing the complaint, that even had there been a conversion of the certificate by plaintiff's pledgee the defendants, under sections 162, 166–169 of the Personal Property Law, would be protected by reason of the *quasi* negotiable character of the certificate, which the evidence indicated had been pledged by plaintiff without any restriction upon the pledgee's power to repledge. The last purchaser of the certificate having acquired an indefeasible title thereto was entitled to demand and obtain a transfer of the stock upon the books of the corporation, and the defendants, in effecting such transfer, a function which their principal was legally obligated to perform, incurred no liability.

ACTION in conversion to recover value of corporate stock.

*Ludwig M. Wilson*, for plaintiff.

*Stetson, Jennings & Russell (Frederic W. Girdner*, of counsel), for defendants.

GENUNG, J. This is an action in conversion to recover the value of ten shares of St. Louis Bridge second preferred stock. The defendants are members of the firm of J. P. Morgan & Co., which firm was acting as the stock transfer agent of the St. Louis Bridge Company at the time of the alleged conversion.

The complaint sets forth that on or about December 23, 1921, a certain certificate, No. 6911, representing the said ten shares, was stolen from the plaintiff, and that the defendants, with knowledge of the facts, transferred the stock and thereby converted the same. The plaintiff testified that the certificate in question was indorsed by him in blank and delivered to a brokerage house known as William Walsh & Co., as a pledge to secure a margin account. Thereafter Walsh & Co. repledged this certificate with Levy Brothers to secure in part an indebtedness due from Walsh to Levy; Levy Brothers sold the certificate in partial liquidation of Walsh & Co.'s debt at or about the time Walsh & Co. became insolvent. The certificate was thereafter purchased successively by various brokerage concerns, to wit, Kieley & Horton, A. M. Kidder & Co., Judson G. Wall and finally by the firm of R. F. Griggs & Co. of Waterbury, Conn., each of whom purchased

the certificate for value in the regular course of business without knowledge of the plaintiff's claim.

In December, 1921, and prior to the purchase of the certificate by R. F. Griggs & Co., the plaintiff communicated with J. P. Morgan & Co. and requested that a stop be placed against the transfer of this certificate. The defendants acknowledged the letter and asked to be advised when the stop was to be removed. Later, in March, 1922, the plaintiff called at the offices of the defendants, and talked with Mr. Atterbury, manager of the transfer department. Plaintiff claims that he was told that when the certificate was presented for transfer he would be notified and would be given a chance to file a bond to indemnify the defendants. Mr. Atterbury denied this statement of the conversation, and testified that he advised the plaintiff that a bond of indemnity would have to be furnished, protecting them, before a stop could be established against the further transfer of the stock. The version of Mr. Atterbury is accepted by the court. No such bond of indemnity was ever furnished.

In May, 1922, R. F. Griggs & Co. presented the stock certificate to defendants' firm and requested that it be transferred into the name of one Alice L. Swift, which was done accordingly. This transfer is the alleged act of conversion upon which the plaintiff is suing.

Clearly the plaintiff cannot succeed unless Walsh & Co. converted the stock in the first instance. Whether the repledging amounted to a conversion depends upon the agreement pursuant to which the certificate of stock was pledged, and the condition of the plaintiff's account with Walsh & Co. The law governing the relation of stockbroker and customer was stated in the recent case of *Matter of Toole,* 274 Fed. Rep. 337, 340, as follows: " It appears, however, by Foster's own testimony that the debit charge against him on the bankrupts' book was $198,000, and that the market value of all of his securities, including the bonds now sought to be reclaimed, was at that time $230,000. As a stockbroker has a lien on the securities of his principal for the unpaid balance of any advances which the broker has made for his customer, it follows that Toole, Henry & Co. on the day prior to the bankruptcy were under no obligation to turn over the Green Bay bonds or any of the other securities to Foster, unless he had then and there tendered payment to them of his indebtedness of $198,802.79. *It cannot, therefore, be said that the brokers were indebted to Foster on the day prior to their bankruptcy in the sum of* $20,000, *or in any other amount.*

" *As Foster was a margin trader, Toole, Henry & Co., in the*

*absence of an agreement that they would not do so, had the right to repledge collateral deposited with them to secure advances on margin transactions. In re Ennis, 187 Fed. 720, 109 C. C. A. 468; * * *."* See, also, *Richardson* v. *Shaw,* 209 U. S. 365; *Matter of Pierson,* 225 Fed. Rep. 889; *Levy* v. *Loeb,* 85 N. Y. 365; 1 Dos Passos on Stock-Brokers (2d ed.), 250.

The testimony indicates that the certificate in question was pledged by the plaintiff with Walsh & Co. without any restriction upon the latter's power to repledge the same. It also appears from the statements put in evidence by the plaintiff that Walsh & Co. had made advances on the plaintiff's margin account. These facts would seem to have justified Walsh & Co. in repledging the certificate, and it is difficult under the circumstances to follow the plaintiff's contention that the certificate in question was originally stolen or converted.

It is unnecessary, however, to rest the decision of the case on this ground. Even had there been a conversion by Walsh & Co., the defendants would, nevertheless, be protected by reason of the quasi-negotiable character of stock certificates. The following sections of the New York Personal Property Law are important in this connection:

" § 162. Title to a certificate and to the shares represented thereby can be transferred only, (a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby * * *.

" § 166. * * * The delivery of a certificate to transfer title in accordance with the provisions of section one hundred and sixty-two is effectual, except as provided in section one hundred and sixty-eight, *though made by one having no right of possession and having no authority from the owner* of the certificate or from the person purporting to transfer the title.

" § 167. * * * The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in section one hundred and sixty-eight, though the indorser or transferor, * * *

" (b) Has revoked the delivery of the certificate, or the authority given by the indorsement or delivery of the certificate, or * * *

" (d) Has received no consideration."

" § 168. * * * If the indorsement or delivery of a certificate * * * was made

" (c) without authority from the owner * * * the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless * * *

" 1. The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful * * *.

" Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it.

" § 169. * * * Although the transfer of a certificate or of shares represented thereby has been rescinded or set aside, nevertheless, if the transferee has possession of the certificate or of a new certificate representing part or the whole of the same shares of stock, a subsequent transfer of such certificate by the transferee, mediately or immediately, to a purchaser for value in good faith, without notice of any facts making the transfer wrongful, shall give such purchaser an indefeasible right to the certificate and the shares represented thereby."

In the case of *Union Trust Co.* v. *Oliver*, (1915) 214 N. Y. 517, the court stated as follows, at page 524: " The essential features of *Russell* v. *American Bell Telephone Co.* (180 Mass. 467) closely resemble those of the present case. The plaintiff's testatrix had intrusted a certificate of stock, indorsed in blank, to a fraudulent agent, who, instead of using it for the designated purpose, obtained an advance from the defendant by giving the certificate in pledge. It was contended that as the agent had obtained possession of the certificate by fraud, it was obtained by larceny in the judgment of the law; but the court held that the rule that the property would not pass when the instrument was stolen was not based upon the name of the agent's crime, ' but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and, therefore, is not considered to have done enough to be estopped as against a purchaser in good faith.' The court went on to say that in such a case the owner certainly has not done enough if the estoppel is based upon the principle that when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. ' But in a case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether, by a stretch which extends larceny beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present and the estoppel arises.' " See, also, *National Safe Deposit Co.* v. *Hibbs*, 229 U. S. 391; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616; *Hannahs* v. *Hammond Typewriter Co.*, 158 App. Div. 620; *Marden* v. *Dorthy*, 160 N. Y. 39; 10 Cyc. 612; 16 id.

1072; *Matter of Mills,* 125 App. Div. 730; affd., 193 N. Y. 626; *Reichard* v. *Hutton,* 158 App. Div. 122; *Knox* v. *Eden Musee Co.,* 148 N. Y. 441.

The plaintiff relies on *Clarkson Home* v. *Missouri, K. & T. R. Co.,* 182 N. Y. 47, but that case relates to registered bonds, which were stolen from plaintiff, presented to defendant, exchanged for negotiable bonds, and which negotiable bonds were sold in the open market. The facts are not similar to the case in suit.

R. F. Griggs & Co., at whose request the stock was transferred, acquired an indefeasible title thereto by reason of their having paid value for the certificate without notice of the plaintiff's claim as to the alleged conversion. The fact that the certificate stood in the name of the plaintiff and was indorsed in blank was not a fact to have put R. F. Griggs & Co. on notice.

In the case of *Fisher* v. *Mechanics & Metals Nat. Bank,* 89 Misc. Rep. 587, the court stated: " But plaintiff claims that the bank was put on notice, and, therefore, is not a *bona fide* holder. This by virtue of the fact that the certificates of stock stood in the name of the plaintiff and not in the name of the brokers. This point is without merit. It is common knowledge that certificates of stock standing in the name of an original owner and indorsed in blank are dealt in thousands of times, and during a period, often of many years, without change of name of the original owner, although title has changed on innumerable occasions."

Nor is there any theory on which notice to the defendants could be held to impair the title acquired by R. F. Griggs & Co. by virtue of the statutes and decisions referred to above. Actual notice or facts charging a holder of stock with a duty to investigate must be communicated to the party himself or to his agent. A stock transfer agent is the agent of the corporation by which it is employed, and is not the agent of the stockholders. The stock transfer agent owes no affirmative duty to a stockholder, and incurs no personal liability by refusing to make a transfer at the request of the latter. In *Dunham* v. *City Trust Co.,* 115 App. Div. 584, 587; affd., 193 N. Y. 642, the court stated: " In *Denny* v. *Manhattan Co.* (2 Den. 115), the resident transfer agent of a foreign corporation unjustly refused a transfer, and the plaintiffs brought action on the case. The court held that the action did not lie against the defendant, as it was not the agent of the plaintiffs and owed them no duty, but the agent of the defendant, to whom alone it was answerable for any neglect in the discharge of agency. * * * " See, also, *Denny* v. *Manhattan Co.,* 2 Den. 115; affd., 5 id. 639 (Court for the Correction of Errors); *Orvis* v. *Lorraine Co.,* 183 App. Div. 1; *Cooley* v. *Curran,* 54 Misc. Rep. 221, 572;

*Colvin* v. *Holbrook*, 2 N. Y. 126; *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; Parsons Cont. (6th ed.) 65; Morawetz Priv. Corp. [2d ed.] 537; 1 Am. & Eng. Ency. of Law [2d ed.], 1119; 10 Cyc. 835–964.

R. F. Griggs & Co. having acquired an "indefeasible title" to the stock certificate in question, was *a fortiori* entitled to demand and obtain a transfer of the stock upon the books of the corporation. The defendants, as transfer agent, in effecting such transfer, performed a function which their principal, the St. Louis Bridge Company, was legally obligated to perform, and in so doing incurred no liability.

The defendants are entitled to judgment dismissing the complaint on the merits.

Judgment accordingly.