[Civ. No. 14263. First Dist., Div. Two. May 15, 1950.]

JOHN WILLIAM MEARS, Respondent, v. CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO (a Corporation), Appellant.

Chickering & Gregory and John Philip Coghlan for Appellant.

Eugene H. O'Donnell and Ralph Bancroft for Respondent.

THE COURT.—This is an action in conversion instituted by John W. Mears, owner and holder of 20,000 shares in I.X.L. Mining Company, a Philippine Corporation, herein further called the Company, against Crocker First National Bank of San Francisco, further called Crocker Bank, a transfer agent for stock of the company, because of its alleged refusal to transfer said 20,000 shares into block shares of 20 shares each. The company, mentioned in the complaint as a defendant, was not served and is not a party to the action. Judgment below was for plaintiff and Crocker Bank appeals. On a prior appeal Division One of this court reversed a judgment dismissing the action after the sustaining of a demurrer to the complaint on the ground that it did not state a cause of action (84 Cal.App.2d 637 [191 P.2d 501], hearing denied).

The facts are undisputed. The company has outstanding two types of stock, one of Philippine registry with a par value of 20 centavos, or 10 cents a share, the other known as block

shares, the equivalent of 20 shares of the first type. Under the articles of incorporation of the company shares of Philippine registry are convertible into block shares. Block shares were created in order that the company might have shares eligible for listing on the San Francisco Stock Exchange for which a certain minimum par value per share is required. Said exchange also requires the maintaining in San Francisco of a transfer office or agency where all stock of the corporation listed on the exchange shall be directly transferable. Crocker Bank at San Francisco was made transfer agent for the block shares and moreover agent for the conversion of shares of the other class into block shares, both by one resolution of the board of directors of the company. The resolution fixes in detail the agents' duties, powers and rights and, among other things, authorizes the agent at any time to apply for instructions to an officer of the company.

On February 15, 1946, plaintiff came to the Crocker Bank and requested that 20,000 shares of stock in the company standing in his name under Philippine registry be transferred into block shares. The two certificates representing his original shares had been pledged before the war to the Hong Kong & Shanghai Banking Corporation at Manila for a loan which at the time of the desired transfer still amounted to approximately $500 and were then in the possession of the San Francisco office of said bank. At the Crocker Bank plaintiff was informed in substance that Crocker Bank had received no reports from the company from the Philippine Islands since the beginning of the war, that under Japanese domination action might have been taken impairing plaintiff's rights, that they might have become subject to wartime restrictions or other claims and that therefore Crocker Bank prior to transfer would have to communicate with the company in the Philippine Islands. Both orally and in a written demand of the same day plaintiff argued that such was unnecessary in his case because it could be proved by the San Francisco office of the Hong Kong & Shanghai Banking Corporation that these certificates had been in the possession of that corporation since they were issued prior to the war in a period concerning which Crocker Bank had company reports and that they were taken out of Manila by the United States government and returned to the San Francisco office of that corporation. Defendant did not comply with the demand to transfer. On April 3, 1946, plaintiff was informed that Crocker Bank had received authorization for conversion from the company and

was prepared·to convert upon receipt of the certificates. At the time in question communication by mail from San Francisco to Manila and back took over a month. The certificates were not presented for transfer.

The trial court found that Crocker Bank failed to comply with plaintiff's demand within a reasonable time and concluded that it thereby converted the stock. Plaintiff was given judgment for its value of $5,500.

Appellant urges in the first place that there is no direct liability of a transfer agent or transfer officer to the holder for delay in transferring or refusal to transfer stock even if such delay or refusal is wrongful, and might subject the corporation itself to liability in damages or in conversion. The agent or officer owes his duty only to the company, his principal, not to the individual stockholder.

That such is the law in the absence of any express statutory provision to the contrary is borne out by numerous and unanimous authorities. (18 C.J.S. p. 1056; 13 Am.Jur., Corporations, p. 436; 1 Mechem on Agency, p. 1099; 12 Fletcher on Corporations, § 5525; 6 Thompson on Corporations (3d ed.) 309; Christy & McLean Transfer of Stock (2d ed.), p. 444; *Denny* v. *Manhattan Co.*, 2 Denio (N.Y.) p. 115; *Dunham* v. *City Trust Co.*, 115 App.Div. 584 [101 N.Y.S. 87], aff. 193 N.Y. 642 [86 N.E. 1123]; *Cooley* v. *Curran,* 54 Misc. 221 [104 N.Y.S. 424] and 54 Misc. 572 [104 N.Y.S. 751]; *Nicholson* v. *Morgan,* 119 Misc. 309 [196 N.Y.S. 147, 151]; *Palmer* v. *O'Bannon Corp.*, 253 Mass. 8 [149 N.E. 112]; *Lewis* v. *Hargadine-McKittrick Dry Goods Co.*, 305 Mo. 396 [274 S.W. 1041]; *Fowler* v. *National City Bank of Rome,* 49 Ga.App. 435 [176 S.E. 113]; *Hulse* v. *Consolidated Quicksilver Min. Corp.*, 65 Idaho 768 [154 P.2d 149].) The theoretical basis of the rule is that the delay or refusal is a nonfeasance, the nonperformance of a duty owed to the principal only because of the existing agency relation, not a misfeasance or malfeasance, the breach of a duty owed individually to third parties independent of such agency relation. (See, especially, *Dunham* v. *City Trust Co., supra,* at p. 90 [101 N.Y.S.]; *Lewis* v. *Hargadine-McKittrick Dry Goods Co., supra,* at p. 1045 [274 S.W.].) Thus the question of the direct liability of the transfer agent or transfer officer is brought under a general distinction with respect to the liability of agents. (See Restatement of Agency, §§ 343, 352; 3 C.J.S. Agency, §§ 221, 223.) The direct liability of the transfer agent or transfer officer

for nonfeasance with respect to transfer of stock is also denied in the cases where the action sounds in conversion. (*Cooley* v. *Curran, supra,* and *Hulse* v. *Consolidated Quicksilver Min. Corp., supra,* as to officers; *Palmer* v. *O'Bannon Corp., supra,* as to transfer agent.) In this state the general principle denying personal liability of a transfer officer is recognized in *Lacoe* v. *Wolfe,* 133 Cal.App. 159, 161 [23 P.2d 831], where it is said: "While a corporation may be liable for such a refusal to act [to transfer stock] on the part of its secretary, if wrongful, in the absence of any statutory provision the secretary is not personally liable for such an official act." However, the decision in that case, which upheld the sustaining without leave to amend of a demurrer for failure to state a cause of action to a complaint for damages against corporate officers, was distinguished on its facts and on change in the statutory provisions in the prior opinion in this case (84 Cal.App.2d at p. 641 et seq.). There are no other California cases directly in point.

■ Respondent argues in the language of an opinion written by the trial judge that the above principle of nonliability and the authorities which support it were cited on the prior appeal and that rulings showing disapproval of them have become the law of the case. This is not so. The complaint, stated in detail in the prior opinion at pages 639-640, contained, over and above allegations in accord with the facts afterwards proved, the following paragraph: "That for the purpose of sale on the stock exchange, it was necessary by reason of an agreement entered into between defendant I.X.L. Mining Company, defendant Crocker First National Bank of San Francisco, and the San Francisco Stock Exchange that common shares of the I.X.L. Mining Company should be converted into blocks of 20 shares each before they could be offered for sale or sold on the San Francisco Stock Exchange." It was expressly on the basis of this specific allegation that the complaint was held to state a cause of action, the court saying at page 640: "As will be noted, the only point to be decided is whether a stock transfer agent for a corporation, having entered into a three-way agreement with the corporation and the stock exchange limiting sales of the corporation's stock on the exchange to blocks containing a certain specified number of shares, can by reason thereof be held liable to a stockholder in conversion for refusal upon proper demand to convert the stockholder's holdings of the corporate stock into

blocks containing the number of shares specified in said agreement.

"Respondent bank argues as a general principle that an agent is not liable to a third person for a mere nonfeasance, the failure to perform a duty owed solely to the principal, which failure on the part of the agent might incidentally affect adversely the interests of such third party. Whatever merit this argument may have as an abstract principle of law it is not applicable here for in the instant case the agent went further, according to the allegation in the complaint which we must assume for purposes of this appeal to be true, and actively participated in exercising some degree of dominion over plaintiff's stock. This exercise of dominion consisted of first entering into the agreement imposing conditions upon the free exercise of plaintiff's right to sell, convey or dispose of his stock and by then refusing to perform a resultant duty." The quoted allegation was proved to be untrue. Defendant Crocker Bank did not enter into any agreement limiting sale of the company's stock on the exchange to block shares of 20 shares, but that restriction was due solely to existing rules of the San Francisco Stock Exchange, and the trial court so found. Crocker Bank was no party to any three-way agreement with the company and the exchange. "[I]f the respondents' evidence does not prove the allegations of the complaint which was considered upon the former appeal, the doctrine of the law of the case does not apply." (*Allen* v. *California Mutual B. & L. Assn.*, 22 Cal.2d 474, 482 [139 P.2d 321]; *Abroms* v. *New York Life Ins. Co.*, 64 Cal.App.2d 449, 456 [149 P.2d 217].) The language of the court clearly shows that it did not intend to make any general ruling disapproving the principle of nonliability of a transfer agent for refusal to transfer irrespective of his participation in a three-way agreement as alleged. See the prior quotation from the opinion, the language on page 643 where the court with respect to the principle of nonliability as recognized in *Lacoe* v. *Wolfe, supra,* says that it is without the issue and that the court does not purport to decide it and on page 645 where it is said that the contention that there was no such agreement as alleged in the complaint might be properly urged as defense upon the trial but could not be considered at the time. Each time the court repeats that it is only concerned with a transfer agent who had prior to refusal participated in a three-way agreement limiting plaintiff's right to dispose of his stock. If any

of the discussions of the law by the court could possibly be considered of wider tenor (there are no definite rulings of that kind) they must under the circumstances be held to be obiter dicta to which the doctrine of the law of the case does not apply. (*Hammond* v. *McDonald*, 49 Cal.App.2d 671, 677 [122 P.2d 332]; *Millsap* v. *Balfour*, 158 Cal. 711, 714 [112 P. 450].) The application of the doctrine of the law of the case will not be extended beyond the exigencies which demand its application. (*Taylor* v. *Bunnell*, 211 Cal. 601, 605 [296 P. 288].) The trial court should have passed on the merits of this principle as applied to the facts found and we also have to decide this point independently.

We do not find any factual circumstance which distinguishes the case as proved from the general character of the cases in which the principle of nonliability was applied. It is contended that the Crocker Bank was under an independent duty to plaintiff as third party beneficiary of the agreement or resolution by which Crocker Bank was appointed as transfer agent, but no specific provision of the resolution is cited or has been found by us which expressly shows an intent to benefit individual stockholders as section 1559, Civil Code, requires to entitle them to enforcement. Every transfer agent must necessarily be appointed and if the fact of such appointment alone would constitute the stockholders third party beneficiaries there always would be a direct obligation towards them contrary to the established rule. Neither is any such aggravated or malicious misconduct of Crocker Bank alleged or shown as might possibly change the character of its action from a mere nonfeasance to a malfeasance or misfeasance. (See *Orvis* v. *Howe*, 183 App.Div. 1 [170 N.Y.S. 264, 267].) The communication with the company prior to transfer was clearly in good faith and its reasonableness only is doubted. Under these circumstances we must apply the rule of nonliability unless there were in force in California at the time of the demand statutory provisions or peculiar rules of case law which imposed direct liability on a transfer agent under the circumstances proved. (Pol. Code, § 4468.)

As such respondent cites in the first place sections 327, 328 and the last part of 368, Civil Code, which at the time in question read as follows: Section 327: "Upon surrender to the secretary or transfer agent of the corporation of a certificate for shares duly indorsed or accompanied by proper evidence of succession, assignment or authority to transfer,

it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.'' Section 328: ''When a transfer of shares of a domestic or foreign corporation on its books is requested and there is a reasonable doubt as to the right of the person seeking such transfer, the corporation or its transfer agent, before recording the transfer of the shares on its books or issuing any certificate therefor, may require from such person reasonable proof of his right to such transfer, and if there remain a reasonable doubt in respect thereto may refuse a transfer unless such person give adequate security or a bond of indemnity executed by a corporate surety or by two individual sureties satisfactory to the corporation as to form, amount and responsibility of sureties. If not satisfactory to the corporation, the surety or sureties shall justify before a judge of any court of record in the county where the transfer is sought and he shall determine the amount of the security or bond, and the responsibility or sufficiency of the sureties, after opportunity has been given the corporation to examine the surety or sureties as to their financial responsibility. The bond shall be conditioned to protect the corporation, its officers and/or its transfer agent or agents and/or registrar or registrars, against any loss, damage, expense or other liability to the owner of the shares by reason of the recordation of the transfer or the issuance of a new certificate for shares.

''If any such proof, security or bond be not furnished when required, as herein provided, neither the corporation nor any officer thereof shall be liable for refusing to record the transfer on its books or issue a new certificate for shares.'' Section 368, in part: ''If any officer of a corporation charged with the duty of entering a transfer of shares upon the books of the corporation and issuing a share certificate unreasonably neglects, fails or refuses to perform such duty after written request by any person entitled thereto, he shall be subject to a penalty of $100 and the further penalty of $10 for each day beginning five days after such request that such default shall continue, up to a maximum of $500, to be paid to each such person aggrieved, which penalty shall be enforced by action and shall be in addition to all other remedies. Every director or other officer unreasonably causing such neglect, failure or refusal to make such entries upon the books of the corporation

or to issue a certificate for shares to a person entitled thereto shall be subject to a like penalty.

"Any penalty prescribed by this section shall be in addition to any remedy by injunction or action for damages or by writ of mandate for the nonperformance of acts and duties enjoined by law upon the corporation or its directors or officers.

"The court in which an action for any such penalty is brought may reduce, remit or suspend such penalty on such terms and conditions as it may deem reasonable when it is made to appear that the neglect, failure or refusal was inadvertent or excusable."

Section 327 clearly imposed a duty on the corporation solely. In sections 328 and the quoted part of section 368 the same provisions did not apply to transfer agents and registrars as to directors or officers of the corporation. With respect to the latter section 368 imposed a penalty "in addition to any remedy by injunction or action for damages or by writ of mandate for the nonperformance of acts and duties enjoined by law upon the corporation or its directors or officers." The last part of section 328 relieved from liability for refusing to transfer the corporation and *"any officer thereof"* if proof, security or bond were not furnished when required, as provided in that section. With respect to transfer agents and registrars neither penalty nor other duty, nor relief from liability is mentioned. We are not concerned in this case with the liability of officers and directors and do not express any opinion on the influence of the above code sections on their liability. With respect to independent transfer agents and registrars they rather indicate the absence of liability than impose it. The only provision from which conceivably any direct liability of transfer agents or registrars could be implied is the one in section 328 requiring the conditions of the bond to protect them also against any loss, damage, expense or other liability to the owner of the shares in case a transfer made by them should infringe on his right, but although this may indicate the possibility of some liability for wrongful transfer, it clearly is insufficient to impose a liability for refusal to transfer or delay in transferring. To impose a liability where it is generally denied in the common law, certainly a liability so drastic as the one in conversion, a clearer mandate of the Legislature seems required.

Respondent further invokes section 2343, subdivision 3, Civil Code, reading as follows: "One who assumes to act as an agent is responsible to third persons as a principal for his

acts in the course of his agency, in any of the following cases, and in no others:

"3. When his acts are wrongful in their nature."

This provision was not intended to eliminate for California the distinction in the agent's liability with respect to nonfeasance and misfeasance, a distinction recognized by Story, to whose work on agency the California Code Commission regularly refers in its annotations on the title in question in the annotated edition of 1872 (see Story on Agency, §§ 308-312). Under section 2343, subdivision 3, of the Civil Code the commission refers to sections 311, 312 of Story, the sections on misfeasance, and then states: "The maxim *respondeat superior* does not exempt the agent from liability even for mere negligence." The note does not mention an intention to change the common law, although the commission in its introduction to the edition promised to give in the notes the reason whenever a change in the existing law was made. It seems clear therefore that the provision was only intended to state the common law rule as to misfeasance (stated in the Restatement of Agency in § 343), but not to alter the common law rule of nonliability of the agent to third parties for failure to perform his duties to his principal (§ 352 of the Restatement). Compare the following statement of St. Sure, District Judge, in *La Flower* v. *Merrill*, 28 F.2d 784, 787: "Section 2343 recognizes the elementary rule that every one is liable for his torts, and an agent or servant no exception merely because such." We think the provision cited means that and no more.

Finally respondent relies on cases like *Swim* v. *Wilson*, 90 Cal. 126, 128 [27 P. 33, 25 Am.St.Rep. 110, 13 L.R.A. 605] and *Weinberg* v. *Dayton Storage Co.*, 50 Cal.App.2d 750, 756 [124 P.2d 155], which contain general expressions to the effect that when the principal is guilty of conversion, the agent is guilty also, and points out that a corporation is liable in conversion in case of unreasonable refusal to transfer. (*Ralston* v. *Bank of California*, 112 Cal. 208 [44 P. 476].) In the Swim and Weinberg cases the agent directly assumed dominion over the plaintiff's property in a manner wrongful, independent of his position as agent, in the Swim case by selling and delivering property stolen by his principal from the plaintiff, in the Weinberg case by refusing to deliver to the plaintiff goods owned by the plaintiff which defendant had received from its principal with whom the plaintiff had stored them.

Both were cases of misfeasance with respect to which the rule stated is correct. Notwithstanding its sweeping formulation the rule should however be restricted to such cases of misfeasance and not extended to the exceptional cases of nonfeasance. It may be noted that the Restatement contains specific rules covering the agents' liability in the situation of the Swim and Weinberg cases but no general sweeping rule which would cover also the situation before us. (Restatement of Torts, 233(1) and 237.)

There is nothing in the California law which compels a different solution of the problem before us than that found in the other jurisdictions. As there is no direct liability of a transfer agent for nonfeasance as proved, irrespective of its reasonableness, the reasonableness and other points submitted by the parties do not need investigation.

The judgment is reversed with instructions to the trial court to enter judgment for defendant.

Respondent's petition for a hearing by the Supreme Court was denied July 13, 1950. Schauer, J., voted for a hearing.