**Robert YUEN, Plaintiff,**

v.

**U.S. STOCK TRANSFER COMPANY, a California Corporation, Defendant.**

**No. CV–96–4597 JGD (JGx).**

United States District Court,
C.D. California,
Western Division.

Feb. 4, 1997.

David T. Biderman, Wendy Susan Albers, Perkins Cole, Los Angeles, CA, Thomas F. Quinn, Solomon Pearl Blum & Quinn, Denver, CO, for Robert Yuen.

Paul W. Sweeney, Jr., James K. Lee, Freshman Marantz Orlanski Cooper & Klein, Beverly Hills, CA, for U.S. Stock Transfer Co.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

DAVIES, District Judge.

On January 27, 1997, the Defendant's Motion to Dismiss the Amended Complaint came on for hearing. Having considered the parties' written submissions and oral arguments, the Court hereby GRANTS the motion and orders the Amended Complaint dismissed without prejudice for reasons set forth below.

### Background

Plaintiff Robert Yuen ("Yuen") is an individual and a resident and citizen of Hong Kong. Defendant U.S. Stock Transfer Company ("USST") is a corporation organized and existing under the laws of the State of California, with its principle place of business in Glendale, California. Nam Tai Electronics, Inc. ("Nam Tai") and Tele–Art, Inc. ("Tele–Art") are companies incorporated in the British Virgin Islands. Defendant's Request to Take Judicial Notice ("RTJN") [1], Exhibit B at 2 and 3. Nam Tai's shares are publicly traded on the National Market System of the National Association of Securities Dealers. Opp. at 1. USST is the stock transfer agent for Nam Tai.

On or about January 25, 1988, Nam Tai granted an option ("Option") to Tele–Art to purchase shares of Nam Tai common stock. RTJN, Exhibit A at 259–60. In May 1993, Tele–Art exercised the Option and purchased 472,727 shares of Nam Tai common stock. RTJN, Exhibit B at 4 and 5. The purchase included the 122,727 shares of Nam Tai common stock which are the subject of this lawsuit. RTJN, Exhibit B at 4 and 5; Complaint, ¶ 5. The plaintiff holds the stock certificate, issued by Nam Tai.

The stock certificate bears a Restrictive Legend which designates the shares as restricted under Rule 144, promulgated under the Securities Act of 1933. The legend reads as follows:

"The shares represented by this Certificate have not been registered under the Securities Act of 1993 (the 'Act') and are

1. In support of their motion, USST has submitted to the Court several documents consisting in SEC filings, and orders and pleadings connected with a case currently pending in a proceeding before the High Court of Justice of the British Virgin Islands, along with a Request to Take Judicial Notice, pursuant to Federal Rule of Evidence, Rule 201. USST has not asked that the motion, brought pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), be converted to one for summary judgment. "[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2nd Cir.1991). The Court may also take judicial notice of pleadings, orders and statutes from other jurisdictions if the documents are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned. Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207 n. 5 (9th Cir.1995). The plaintiff has not challenged USST's request for judicial notice of these documents. Consequently, the Court grants USST's request to take judicial notice.

'Restricted Securities' as that term is defined in Rule 144 under the Act. The shares may not be offered for sale, sold or otherwise transferred except pursuant to an effective registration under the Act, or pursuant to an exemption from registration under the Act, the availability of which is to be established to the satisfaction of the Company."

Amended Complaint (at times hereafter "AC"), Exhibit A.

On or about June 10, 1996, Robert Yuen submitted the stock certificate for the shares in question to USST, requesting reissuance of the certificate without the Restrictive Legend. AC ¶ 10, Exhibit B. USST refused to honor Yuen's request and remains in possession of the shares.[2] AC ¶ 13. This is the event that gives rise to the current action.

The funds utilized by Tele–Art to purchase the Nam Tai stock, totaling $1,181,817.50, were obtained by means of a loan from the Bank of China in Hong Kong. The loan was secured by the assets and personal guarantee of Elmer Yuen, Tele–Art's principal shareholder, President and Sole Director. RTJN, Exhibit B at 4. In addition, collateral for the Bank of China loan was provided by Safari Development Company Limited ("Safari"), a Hong Kong corporation controlled by Robert Yuen, the plaintiff in this lawsuit, and the father of Elmer Yuen.

As a result of Safari's pledge of collateral, on or about May 27, 1993, 122,727 of the Nam Tai common stock purchased by Tele–Art pursuant to the option were registered in the name of Robert Yuen. RTJN, Exhibit C at 4 and 5. These are the Nam Tai shares that are the subject of this action. The Bank of China loan is secured by a first mortgage on these shares. RTJN, Exhibit B at 5, and Exhibit C at 7. Robert Yuen has only a second charge on the shares, despite their being registered in his name. This charge was obtained pursuant to an unwritten pledge arrangement. RTJN, Exhibit C at 8. According to a letter by plaintiff's counsel to USST, attached to the Amended Complaint as Exhibit B, Yuen received permission from the Bank of China to lift the Restrictive Legend on the stock certificate.

Public filings with the Securities and Exchange Commission indicate that despite the mortgage held by the Bank of China and the pledge to Robert Yuen of the 122,727 shares, it is Tele–Art that "beneficially owns" the stock, and "has the sole voting power over the shares." RTJN, Exhibit B at 4; Exhibit C at 5. Tele–Art's public filings state that Yuen's pledge arrangement terminates when the Bank of China's mortgage on the property used as collateral to induce the Bank to finance the Option is released. RTJN, Exhibit C at 8. "After payment of the amounts due to BOC [the Bank of China] and release by BOC of the 122,727 shares registered in the name of Robert Yuen, the share certificate representing the shares shall be registered in the name of Tele–Art." *Id.* There is no indication presented that Tele–Art has defaulted or any foreclosure proceeding initiated that would entitle the beneficial ownership of the subject stock to be vested in any person or entity other than Tele–Art.

On or about September 30, 1993, the Industrial Development Authority of Ireland filed a lawsuit against Tele–Art in the High Court of Justice of the British Virgin Islands. RTJN, Exhibit F. A default judgment was entered against Tele–Art and in favor of the successor to the plaintiff Industrial Development Authority of Ireland, FORFAS, in the amount of $799,099.12 (U.S.). RTJN, Exhibit G.

On May 13, 1996, a Charging Order Absolute was entered by the High Court of Justice of the British Virgin Islands which ordered that "the interest of the Defendant Tele–Art, Inc. in the asset specified in the schedule hereto stand charged with the payment of U.S. $799,099.12, the amount due from the Defendant [Tele–Art] to the Plaintiff on a judgment of the High Court of Justice dated November 10, 1993." RTJN, Exhibit I. The schedule specifies that the assets of Tele–Art so charged are "[a]ll the shares in the British Virgin Island company, Nam Tai Electronics Inc., International Busi-

---

**2.** USST does not dispute that it remains in possession of the certificate, but points out that the plaintiff sent the certificate to USST with his request to remove the Restrictive Legend, and has not made any subsequent demand for the return of the certificate. Mot. at 11, n. 7.

ness Company # 1648 presently registered in the name of the Defendant." *Id.*

The order also contains a "Stop Notice" directed to Nam Tai, among others, which states that with respect to the securities specified in the order, "you may not without notice to FORFAS ... register and transfer, or make any redemptive payment or pay any dividend or interest." *Id.* The penalty under British Virgin Island law for violating such an order is that the violator "shall be liable to pay the judgment creditor the value of the stock transferred ..." RTJN, Exhibit J.

On July 16, 1996, FORFAS filed a request with the High Court of Justice of the British Virgin Islands to have the stock which is the subject of this action covered by the previously issued Charging Order Absolute. RTJN, Exhibit K. Specifically, FORFAS requested, among other things, that the Charging Order be amended to include the following:

> "all shares in the British Virgin Island company Nam Tai Electronics Inc. whether registered in the name of the Defendant [Tele–Art] or beneficially owned by the defendant since it has recently come to the knowledge of the Plaintiff that there are approximately 122,727 shares in Nam Tai Electronics Inc., beneficially owned by the Defendant but registered in the name of Robert Yuen, the father of Elmer Yuen, president and sole director of the Defendant and further that the said Robert Yuen is now attempting to sell these shares."

RTJN, Exhibit K, ¶ (i).

On September 27, 1996, the High Court of Justice of the British Virgin Islands granted FORFAS's request and amended the schedule to the Charging Order to cover "[a]ll the shares in the BVI Company Nam Tai Electronics Inc. beneficially owned by the Defendant [Tele–Art]." RTJN, Exhibit L.

Subsequently, the Bank of China filed a request with the High Court to dissolve the Charging order, on grounds that it had a superior right to all of Tele–Art's Nam Tai stock. RTJN, Exhibit M. On October 3, 1996, the High Court issued an order denying the Bank of China's request. RTJN, Exhibit N.

*Procedural History*

Plaintiff's Complaint was filed on July 1, 1996. The original Complaint alleged two causes of action, for (1) breach of statutory duty by USST, and (2) conversion and trover. On September 23, 1996, this Court granted the defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6), with leave to amend. An Amended Complaint was filed October 15, 1996.

The Amended Complaint asserts the same two causes of action as the original Complaint. It is identical to the original in essentially all respects except that California Commercial Code § 8406 has been added as the new grounds for the claimed breach of statutory duty. Specifically, as to the first cause of action, Yuen alleges that he is entitled to have the Restrictive Legend removed from his stock certificate by USST, pursuant to Rule 144(k) of the Securities Act of 1993. He claims that USST's refusal to reissue the stock certificate without the Restrictive Legend constitutes a breach of its duty as a stock transfer agent under § 8406. Yuen asserts that the marketability and value of the stock has consequently been impaired and USST is liable for the resulting damages.

As to the second cause of action for conversion and trover, Yuen claims the actions of USST in failing to remove the Restrictive Legend had the foreseeable and actual effect of depriving him of the use and benefit of the shares. He asserts that USST's acts were taken under circumstances of willful and wanton disregard for his rights, and as a proximate result he is entitled to reasonable exemplary damages. Yuen asks for compensatory damages in an amount to be established at trial, exemplary damages, costs of the suit, and pre- and post-judgment interest.

Although it is not stated in the Complaint, Yuen clarified at the hearing on the motion that he is not seeking the removal of the Restrictive Legend itself, but only money damages from the defendant for its "delay" in doing so, equal to the amount the stock declined in value between the First Charging

Order Absolute, issued on May 13, 1996, and the Amended Charging Order on July 16, 1996, in which the High Court of Justice of the British Virgin Islands "amended" its prior order to make it explicit that the shares "beneficially owned by defendant [Nam Tai]" included those registered to Yuen. The plaintiff indicated at the hearing that these damages exceeded $450,000.00.

In the instant motion to dismiss, USST argues the Amended Complaint should be dismissed on four independent grounds: (1) Section 8406 (now § 8407) of the California Commercial Code cannot provide the basis for Yuen's breach of statutory duty claim, as the choice of law provision attached to the statute (California Commercial Code § 8106; now § 8110) provides that the law of the stock issuer's jurisdiction of incorporation governs transfer duties. The issuer in this case, Nam Tai, is a British Virgin Islands company. Under British Virgin Islands's law, USST argues, a stock transfer agent owes no direct duty to a shareholder, but only to the stock issuer. (2) Yuen's claim for common law conversion is precluded by long-standing case law in California, which holds that there is no liability of a transfer agent to a stockholder for delay or refusal in transferring shares. (3) Yuen is not the real party in interest in this action, and hence is barred from bringing the suit under FRCP 17(a). (4) Principles of comity require that the action be dismissed; the stock at issue in this action is the subject of a pending judicial proceeding in the High Court of Justice of the British Virgin Islands, and that court has issued an order specifically prohibiting transfer of all stock beneficially owned by Tele–Art, including the Yuen shares.

### Discussion

### A. *Comity*

■ The principles of comity require dismissal of the Complaint. The stock at issue is currently the subject of legal proceedings in the High Court of Justice of the British Virgin Islands. That court issued a Charging Order Absolute identifying the Yuen block of stock, and prohibiting its registration and transfer.

■ When proceedings are pending on a related matter in a foreign court, United States courts have been reluctant to entertain claims that might bear upon the same subject matter. *Fleeger v. Clarkson Co., Ltd.*, 86 F.R.D. 388, 392–94 (N.D.Tex.1980); *see also Ensign–Bickford Co. v. ICI Explosives USA Inc.*, 817 F.Supp. 1018, 1031–32 (D.Conn.1993); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 998–1000 (2d Cir.1993). The extension or denial of comity is within the court's discretion, and is reversed upon appellate review only where an abuse of discretion is found. *Remington Rand Corp.—Delaware v. Business Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir.1987).

■ The Supreme Court has defined comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). As a general rule, comity may be granted where "it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Serv. AB,* 773 F.2d 452, 457 (2d Cir.1985). As long as the foreign court abides by "fundamental standards of procedural fairness," granting comity is appropriate. *Id.* Unless "a foreign country's judgments are the result of outrageous departures from our own notions of 'civilized jurisprudence,' comity should not be refused." *British Midland Airways Ltd. v. International Travel Inc.,* 497 F.2d 869, 871 (9th Cir.1974). Comity has been recognized as particularly appropriate where the court is confronted with foreign bankruptcy proceedings. *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d Cir.1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings"). "[O]bedience to even an assertedly void (not merely voidable) order is required unless and until it has been vacated or reversed." *Zapon v. U.S. Department of Justice,* 53 F.3d 283, 285 (9th Cir.1995).

The Court is persuaded it would be contrary to principles of comity to exercise jurisdiction over the instant action. It would be inappropriate for this Court to enter any order that would force USST to violate the order of the High Court of Justice of the British Virgin Islands. Accordingly, the case is dismissed.

### B. *Failure to State a Claim Under California Law*

Alternatively, dismissal of the Amended Complaint is warranted as the plaintiff fails to state a claim under California law for either breach of a statutory duty or common law conversion.

Yuen contends that § 8406[3] of the California Commercial Code provides the statutory basis for a direct claim of a shareholder against a transfer agent, and furnishes the grounds for the present action against USST. Section 8406 reads:

"If a person acts as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of transfers of its certificated securities or in the registration of transfers, pledges, and releases of its uncertificated securities, in the issue of new securities, or in the cancellation of surrendered securities, then both of the following are applicable:

\* \* \* \* \* \*

(b) With regard to the particular functions he or she performs, he or she has the same obligation to the holder or owner of a certificated security or to the owner or pledgee of an uncertificated security and has the same rights and privileges as the issuer has in regard to those functions."

However, Yuen's claim that § 8406 (now § 8407) applies in this action is undercut by another provision of the California Commercial Code. In Section 8106[4], the California Commercial Code expressly defines the choice of law rule applicable to transfer duties, notwithstanding other provisions of the Code:

"The law of the jurisdiction of organization of the issuer governs the validity of a security, the effectiveness of registration by the issuer, and the rights and duties of the issuer with respect to all of the following:

(a) Registration of transfer of a certificated security.

(b) Registration of transfer, pledge, or release of an uncertificated security.

(c) Sending of statements of uncertificated securities."

USST argues that § 8106 precludes application of § 8406. Since the issuer, Nam Tai, is organized under the laws of the British Virgin Islands, USST argues that it is the law of the British Virgin Islands that applies, not California law.

This position is strengthened by revisions to the California Commercial Code. The new version of the code section, § 8110, reads:

"(a) The local law of the issuer's jurisdiction, as specified in subdivision (d), governs the following:

(1) The validity of a security.

(2) The rights and duties of the issuer with respect to registration of transfer.

(3) The effectiveness of registration of transfer by the issuer.

(4) Whether the issuer owes any duties to an adverse claimant to a security.

(5) Whether an adverse claim can be asserted against a person to whom transfer of a certificated or uncertificated security is registered or a person who obtains control of an uncertificated security.

\* \* \* \* \* \*

(d) "Issuer's jurisdiction" means the jurisdiction under which the issuer of the security is organized or, if permitted by the law of that jurisdiction, the law of another jurisdiction specified by the issuer.

---

**3.** Effective January 1, 1997, § 8406 was repealed, modified and recodified as § 8407 of the California Commercial Code. The substance of the statute remains essentially unchanged. The quotation is from the prior version of the statute.

**4.** Section 8106 has been repealed and enacted in revised form as § 8110, effective January 1, 1997.

An issuer organized under the law of this state may specify the law of another jurisdiction as the law governing the matters specified in paragraphs (2) to (5), inclusive, of subdivision (a)."

The Official Comments to the 1994 Revision of the Uniform Commercial Code Section 8–110 clarify the policy behind the rule: "The principal policy reflected in the choice of law rules in subsection (a) is that an issuer and others should be able to look to a single body of law on the matters specified in subsection (a), rather than having to look to the law of all of the different jurisdictions in which security holders may reside."

USST cites cases from several jurisdictions which hold that the law of incorporation of the issuer establishes transfer duties under the UCC, including obligations of a transfer agent. *See e.g., Catizone v. Memry Corp.,* 897 F.Supp. 732, 735–37 (S.D.N.Y.1995); *American Securities Transfer, Inc. v. Pantheon Industries, Inc.,* 871 F.Supp. 400 (D.Colo.1994).

The Court is persuaded by USST's reading of § 8106 and § 8110. Under the terms of the relevant California statutes, it is the law of the British Virgin Islands that governs.

USST represents that under British Virgin Islands law, a transfer agent owes no duty to a stockholder. A single case is furnished to the Court in support of this, *Montgomerie v. U.K. Mutual S.S. Assoc. Ltd.,* 1 Q.B. 370 (1891). The facts of *Montgomerie* did not involve a transfer agent or transfer of securities. Rather, the case provides generally that an agent has a duty only to his principal and not to a third party. If this case does encapsulate the law of the British Virgin Islands pertaining to potential duties of a transfer agent, as USST represents, Yuen's claim could not be asserted under British Virgin Islands law. However, the Court has not been presented with sufficient briefing on the law of the British Virgin Islands to make that determination. The plaintiff, obviously, has not attempted to assert a claim based in British Virgin Islands law, and in any event, the Amended Complaint is appropriately dismissed on the alternative grounds of comity.

As to plaintiff's claim for conversion, it is a longstanding principle under California common law, as stated in *Mears v. Crocker First Nat'l Bank of San Francisco,* 97 Cal. App.2d 482, 485–86, 218 P.2d 91 (1950), that a transfer agent cannot be held liable in conversion to a stockholder for refusal to transfer stock or undertake an alteration of a certificate. As the court stated in *Mears:* "There is no direct liability of a transfer agent or transfer officer to the holder for delay in transferring or refusal to transfer stock even if such delay or refusal is wrongful, and might subject the corporation itself to liability in damages or in conversion." There appears to be no grounds to believe that California's adoption of the UCC subsequent to the holding in *Mears,* as embodied in part in the statutes cited above, has functioned to abrogate *Mears* and create a new common law cause of action for conversion against transfer agents. The legislature has given no explicit indication that this principle of common law has been displaced. Thus, Yuen cannot assert his claim for conversion and trover based on California common law. And as the preceding has shown, the statutory grounds Yuen invokes are also unavailing.

## C. *Theory of Liability*

The Court notes further that Yuen's theory of liability is suspect. The plaintiff's claimed loss is not only speculative, but supposedly occurred because he was unable to commit an illegal act. According to Yuen's theory, which is not apparent in the Complaint and was not made clear until the hearing on the motion to dismiss, Yuen's claimed loss results from the fact he could not trade shares (that he did not beneficially own) at a period of time when the market price was higher. This period of time, however, occurred subsequent to the issuance of the order of the High Court of Justice of the British Virgin Islands, still in effect, which specifically prohibited transfer of the shares. The order was issued against Tele–Art, the actual beneficial owner of the shares, in the jurisdiction in which Tele–Art is incorporated and resides. Yuen's request to USST to remove the Restrictive Legend on June 10, 1996 was not made until after the order

prohibiting transfer issued. It is apparent to the Court on its face that the Amended Charging Order of the High Court of Justice issued on July 16, 1996[5] was intended to clarify the meaning and scope of the First Charging Order Absolute, issued on May 13, 1996, and thus operate *nunc pro tunc*. It does not represent a protected window in which liability on behalf of USST incurs. Thus, the Court does not find the plaintiff's theory of damages a viable basis for a claim.

### Conclusion

Consequently, the motion is GRANTED; the Amended Complaint is ordered DISMISSED without prejudice.

IT IS SO ORDERED.

---

5. Plaintiff's Complaint was filed on July 1, 1996.